## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## PECOS DIVISION

| | | |
|---|---|---|
| **MARIBEL GLASS,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **No. PE:22-CV-00014-DC-DF** |
| | § | |
| **SUL ROSS STATE UNIVERSITY, PETE** | § | |
| **PENA GALLEGO, BOARD OF REGENTS –** | § | |
| **TEXAS STATE UNIVERSITY SYSTEM,** | § | |
| **KARLIN DEVOLL, BRANDY SNYDER,** | § | |
| **AND KARA O'SHAUGHNESSY,** | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

TO THE HONORABLE DAVID COUNTS, U.S. DISTRICT JUDGE:

BEFORE THE COURT is Defendants Pete Gallego ("Gallego"), Karlin DeVoll ("DeVoll"), Brandy Snyder ("Snyder"), and Kara O'Shaughnessy ("Kara") (together, "Individual Defendants"); Sul Ross State University ("Sul Ross"); and the Board of Regents for the Texas State University System's ("Board of Regents") (collectively, "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint (hereafter, "Motion to Dismiss").[1] This case is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636, and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED**.[2]

## I. BACKGROUND

Plaintiff Maribel Glass ("Plaintiff") allegedly filed a complaint with Defendant Sul Ross on July 16, 2020. She claimed she was exploited and sexually harassed by Professor Ryan O'Shaughnessy ("Professor Ryan"). On July 21, 2020, a "notice of final outcomes" was produced,

---

1. (Doc. 20).
2. (*Id.*).

allegedly finding that Professor Ryan "violated the [Texas State University System] Sexual Misconduct Policy" and "recommend[ing]" "no communication" be had between Plaintiff and Professor Ryan. After allegedly seeking counseling, Plaintiff "wrote and sent a closure letter" to Professor Ryan on October 25, 2020. Plaintiff lastly alleges that on November 10, 2020, Defendants Sul Ross and Kara retaliated against Plaintiff by "having Campus Police issue a trespass warning along with [] harassment and stalking warnings," which purportedly named Kara as the protected party.[3]

On January 20, 2022, Plaintiff filed her Original Petition in state district court in the 394th Judicial District of Brewster County, Texas.[4] The Original Petition asserted causes of action for violations of Article 1 of the Texas Constitution, as well as Title IX of the 1972 Education Amendments to the federal Civil Rights Act of 1964.[5] On April 18, 2022, Defendants removed the case to this Court pursuant to this Court's federal question jurisdiction under 28 U.S.C. § 1441(a).[6]

On October 25, 2022, following leave of this Court, Plaintiff filed her First Amended Petition.[7] Defendants filed their Motion to Dismiss on November 8, 2022, seeking to dismiss this case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[8] Plaintiff filed a Response to the Motion to Dismiss on December 6, 2022.[9] Defendants filed a Reply on December 13, 2022.[10]

Accordingly, this matter is now ripe for disposition.

## II. LEGAL STANDARD

### A.    Federal Rule 12(b)(6)

---

3. (Doc. 19 at 2, 3).
4. (Docs. 1, 1-6).
5. (Doc. 1-6 at 1–6).
6. (Doc. 1).
7. (Doc. 19).
8. (Doc. 20).
9. (Doc. 22).
10. (Doc. 23).

When a defendant files a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the trial court must assess whether a complaint states a plausible claim for relief.[11] The court must accept "all well-pleaded facts in the complaint as true and viewed in the light most favorable to the plaintiff."[12] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

On the other hand, if the complaint only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," dismissal is appropriate.[14] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[15] The court should dismiss a complaint if the court can only infer the mere possibility of misconduct, or if the plaintiff has only alleged that he is entitled to relief rather than stating a claim that is "plausible on its face."[16]

**B.    Federal Rule 12(b)(1)**

Federal courts are courts of limited jurisdiction.[17] The courts possess only that power authorized by the Constitution and statutes of the United States.[18] Motions filed under Federal Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case.[19]

Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[20] "[A]ll

11. *See id.*
12. *See id.*
13. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
14. *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
15. *Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678).
16. *Iqbal*, 556 U.S. at 678–79 (quoting *Twombly*, 550 U.S. at 570).
17. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).
18. *Id.* (citations omitted).
19. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
20. *Id.* (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

uncontroverted allegations in the complaint must be accepted as true."[21] "Thus, unlike a motion to dismiss under [Federal] Rule 12(b)(6), when examining a motion to dismiss for lack of subject matter jurisdiction under [Federal] Rule 12(b)(1), the district court is entitled to consider disputed facts as well as undisputed facts in the record."[22]

The burden of proof for a Federal Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.[23] In fact, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."[24]

### III. ANALYSIS

As a preliminary matter, the undersigned finds it necessary to address Defendants' contention that many of Plaintiff's claims should be dismissed as unopposed.[25] Defendants argue that, because Plaintiff's Response is purportedly insufficient, the portions of the Motion to Dismiss to which Plaintiff failed to respond should be treated as "an indication that Plaintiff has silently conceded the matter and [that] dismissal of those claims is unopposed." Defendants cite Local Rule CV-7(d) to support the proposition that the Court should grant the Motion to Dismiss as "largely unopposed."[26] While it is true that Local Rule CV-7(d) does provide that an absence of a response permits a court to "grant the motion as unopposed," the United States Court of Appeals for the Fifth Circuit cautions courts against granting or denying dispositive relief solely for this reason.[27] Therefore, and the interest of thoroughness, the undersigned will review each of Defendants' arguments as presented seriatim, and address their viability as well as Plaintiff's responses as applicable.

---

21. *Taylor v. Dam*, 244 F. Supp. 2d 747, 752 (S.D. Tex. 2003) (citations omitted).
22. *Id.* (citations omitted).
23. *Ramming*, 281 F.3d at 161 (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)); *Taylor*, 244 F. Supp. 2d at 752.
24. *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996).
25. (*See generally* Doc. 23).
26. (*Id.* at 2, 3).
27. Local Rule CV-7(d)(2); *see also Servicios Azucareros De Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 805–06 (5th Cir. 2012) (acknowledging that "the automatic grant, upon failure to comply with [local rules], of motions that are dispositive of the litigation" has not been approved by the Fifth Circuit).

## A.      Due Course of Law

Defendants present several arguments for dismissing Plaintiff's due course of law claim pertaining to sovereign immunity, the facial merits of the claim, and the unavailability of damages. The undersigned believes it necessary to address Defendants' claim of sovereign immunity prior to addressing the pleading adequacy of Plaintiff's claim.[28]

### 1.      Proper Parties

#### i.      Sovereign Immunity

Sovereign immunity "deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit."[29] The concept of sovereign immunity takes the form of two distinct principles: immunity from suit and immunity from liability.[30] Immunity from suit "prohibits a suit against the State unless the Legislature grants consent."[31] In contrast, "immunity from liability protects the state from judgment even if the Legislature has expressly consented to the suit."[32] Immunity from liability, unlike immunity from suit, "does not affect a court's jurisdiction to hear a case."[33] Texas state organizations, entities, and their employees acting in their official capacities have sovereign immunity from claims brought pursuant to § 19.[34]

Sovereign immunity must be pleaded as an affirmative defense.[35] Defendants have done so in this case.[36] And by removing this case from state court to federal court, it "voluntarily invoked the

---

28. *See Tex. State Auditor's Off. v. Mora-Nichols*, No. 03-03-00113-CV, 2003 WL 22453830, at *5 (Tex. App.—Austin Oct. 30, 2003) (mem. op.).
29. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).
30. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).
31. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Property/Casualty Joint Self-Insurance Fund*, 212 S.W.3d 320, 324 (Tex. 2006).
32. *Jones*, 8 S.W.3d at 638.
33. *Gulf Coast Ctr. v. Curry*, -- S.W.3d --, No. 20-0856, 2022 WL 17998210, at *2 (Tex. Dec. 30, 2022).
34. *See Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 904–05 (Tex. 2021) [hereafter *Villarreal II*]; *Morath v. La Marque Indep. Sch. Dist.*, No. 03-16-00062-CV, 2016 WL 3517955, at *4 (Tex. App.—Austin June 24, 2016) (mem. op.).
35. *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 828 (S.D. Tex. 2015).
36. (*See* Doc. 6 at 5).

jurisdiction of the federal courts and waived its immunity from suit in federal court."[37] Thus, the only question is whether any of Defendants have waived their immunity from liability as to the due course of law claim.

The undersigned concludes Defendants have not, and that they maintain immunity from liability. Sul Ross and Board of Regents are state agencies and governing bodies.[38] Individual Defendants are all undisputedly Texas state employees. Thus, as to Sul Ross and Board of Regents, and to the extent that Individual Defendants are being sued in their official capacity for violations of § 19, sovereign immunity from liability is presumed to apply.

Plaintiff bears the burden of demonstrating that Defendants have waived sovereign immunity.[39] Yet, Plaintiff's First Amended Petition and Response are devoid of any references to immunity.[40] The undersigned further detects no statute that "expressly waives immunity . . . for violations of the due-course-of-law provision."[41] The undersigned holds that Plaintiff has not met her burden of demonstrating this Court's subject matter jurisdiction over these Defendants. Therefore, the § 19 cause of action must be dismissed for want of subject matter jurisdiction under Federal Rule 12(b)(1). Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's § 19 claim against Sul Ross and Board of Regents, as well as Individual Defendants in their official capacity.

### ii. Individual Capacity

Defendants make a brief tangential argument that no Defendant can be sued in their individual capacity for any alleged § 19 violation.[42] Although Defendants do not specifically refer to

---

37. *Meyers v. Texas*, 410 F.3d 236, 255 (5th Cir. 2005).
38. *Trauth v. K.E.*, 613 S.W.3d 222, 227 (Tex. App.—Austin 2020); Tex. Educ. Code § 61.003.
39. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. Jones*, 485 S.W.3d 145, 148 (Tex. App.—Houston [14th Dist.] 2016).
40. (*See generally* Doc. 22).
41. *Banik v. Tamez*, No. 7:16-CV-00462, 2017 WL 2505653, at *26 (S.D. Tex. June 9, 2017).
42. (Doc. 20 at 13).

Individual Defendants, because Sul Ross and Board of Regents are not individuals, the undersigned infers that Defendants' argument refers only to Individual Defendants.

Plaintiff requests damages as well as equitable relief in the form of a declaratory judgment. Under § 19, there is "no implied private right of action for damages" against individuals in their individual capacities.[43] Thus, Plaintiff is not entitled to damages against Individual Damages under § 19 as a matter of law.

For the remainder of Plaintiff's due course of law claim, Plaintiff does not expressly indicate whether she seeks relief against Individual Defendants in just their official capacity, or also in their individual capacity. Plaintiff's declaratory judgment relief specifically requests the Court to conclude that Defendants' "investigative and/or hearing practices and polices [*sic*] either comply or do not comply with the law."[44] In other words, Plaintiff desires the Court enter judgment stating that, in her favor, the practices and policies of Defendants violate Texas constitutional law. This sort of relief is of the type that can only be provided by the Court relating to Individual Defendants in their official capacity, as the action of issuing warnings and "dismissing" Plaintiff purportedly took place as a result of Individual Defendants acting in and within their official capacity.[45]

As Plaintiff only viably requests equitable relief relating to Individual Defendants' official duties, Plaintiff cannot seek individual capacity claims here and can only theoretically pursue Individual Defendants for alleged § 19 violations in their official capacity. From the undersigned's discussion above, sovereign immunity is still applicable to Plaintiff's § 19 claim against Individual Defendants in their official capacities. Plaintiff cannot evade Individual Defendants' sovereign

---

43. *Tex. Dep't of Fam. & Protective Servs. v. E.R.*, No. 13-07-00390-CV, 2009 WL 401622, at *4 (Tex. App.—Corpus Christi Feb. 19, 2009) (mem. op.).

44. (Doc. 19 at 5, 7–8).

45. *See Hunter v. Redmer*, No. JKB-15-2047, 2015 WL 8479211, at *3 (D. Md. Dec. 10, 2015) (finding that "any alleged unlawful actions" of the defendant "were tied inextricably to his official duties" and no *ultra vires* argument was asserted) (alteration and citation omitted); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 108 (1984) (concluding that relief granted by the trial courts was "institutional and official in character").

immunity by pursuing individual capacity claims against Individual Defendants.[46] Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's § 19 claim to the extent it requests relief against Individual Defendants in their individual capacity.

### 2.      Due Course of Law Merits

In the event the Court does not find that sovereign immunity forecloses Plaintiff's due course of law claim, the undersigned turns to its facial sufficiency. Defendants first attack Plaintiff's specific claim for a violation of § 19 of Article I of the Texas Constitution for failure to provide due course of law. They explain that, construing her due course of law claim as one alleging that Sul Ross's "decision to prohibit her from coming to its Alpine campus deprived her of a protected liberty interest in higher education," Plaintiff neglected to plead that her exclusion resulted in dismissal or suspension or otherwise "impacted her ability to pursue a degree" from Sul Ross or elsewhere.

In particular, Defendants maintain that Plaintiff has no protected right to higher education under the Texas Constitution and is therefore not entitled to due process. Further, Defendants contend Plaintiff is not entitled to seek damages against government entities for violations of the Texas Constitution. Defendants assert Individual Defendants and Board of Regents should be dismissed because Plaintiff does not allege they "directed [Sul Ross's] decisions related to her hearings, or lack thereof."[47]

Plaintiff's due course of law claim hinges on § 19 of Article 1 of the Texas Constitution.[48] Section 19 reads: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due court of law of the land."[49] In Texas, "§ 19's 'due course of law provision provides the same protections as the federal Due Process

---

46. *See Doe v. Harrell*, 841 F. App'x 663, 668 n.5 (5th Cir. 2021) (unpublished).
47. (Doc. 20 at 9–10, 10–12, 12–13).
48. (Doc. 19 at 4).
49. Tex. Const. art. 1, § 19.

Clause.'"[50] Thus, as Plaintiff observes, the standards for evaluating violations of the due course of law provision are identical to those utilized in federal Due Process Clause analyses.[51]

At the outset, the undersigned concludes that Plaintiff asserts a procedural due process claim. While Plaintiff's First Amended Petition is in many parts unclear and diffuse,[52] the undersigned assigns as much deference to Plaintiff's allegations as is required. The alleged violation of Plaintiff's liberty interest for want of a hearing and opportunity to respond is impliedly one of procedural due process. "The requirements of procedural due process apply only to the deprivation of interests protected under [§ 19]."[53] "When protected interests are implicated, the right to some kind of prior hearing is paramount."[54] Thus, the elements of a procedural due process claim are three-fold: "(1) state action; (2) a deprivation of a constitutionally[]protected liberty or property interest; and (3) constitutionally inadequate process."[55] The parties here concur that the alleged conduct—the issuance of warnings to Plaintiff—was the work of Sul Ross or its employees, and that these actions were therefore governmental, satisfying the first element.[56]

With this in mind, the substantive questions are as follows: (1) Does Plaintiff allege a protected interest?; (2) If Plaintiff has alleged a protected interest, do Defendants' alleged actions

---

50. *Lucky Tunes # 3, L.L.C. v. Smith*, 812 F. App'x 176, 184 (5th Cir. 2020) (unpublished) (quoting *Fleming v. Texas*, 376 S.W.3d 854, 857 (Tex. App.—Fort Worth 2012)).

51. (Doc. 19 at 4).

52. Plaintiff's allegations throughout the First Amended Petition, as Defendants note, are in some places apparently contradictory. (Doc. 20 at 3 n.2, 15). For example, Plaintiff claims that there is an "impending hearing," but also that Plaintiff is unable to seek legal remedy following a suspension or expulsion from campus "without [] a hearing." (*See* Doc. 19 at 4). Though Defendants' critiques therefore may be warranted, Plaintiff's live pleading is already her second. This case should move forward. *Aubrey v. Barlin*, No. A-10-CA-076-SS, 2014 WL 1872298, at *2 (W.D. Tex. May 7, 2014). Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief . . . must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule 8's purpose is to give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) (citation omitted). The First Amended Petition is sufficient to satisfy Federal Rule 8's requirements, and any unclear allegations will be interpreted in Plaintiff's favor to the extent possible. *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[Plaintiff's] complaint is not a model of the careful drafter's art, but under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory.").

53. *Stafford Mun. Sch. Dist. v. L.P.*, 64 S.W.3d 559, 562 (Tex. App.—Houston [14th Dist.] 2001).

54. *Bd. of Regents v. Roth*, 408 U.S. 564, 569–70 (1972).

55. *Coleman v. United States*, No. A-14-CV-1015-LY, 2015 WL 1651478, at *7 (W.D. Tex. Apr. 13, 2015).

56. (Docs. 19 at 3; 20 at 11).

implicate said interest?; (3) If Plaintiff has alleged both a protected interest and that Defendants'

conduct implicated it, was sufficient due process provided?

The undersigned turns to the remaining due process elements.

### i.        Deprivation of Protected Interest

The second element of a prima facie due process claim concerns whether Plaintiff alleges she

was deprived of a protected liberty or property interest in violation of her due course of law rights. In

Texas, courts follow a two-step inquiry to determine whether a governmental action violates § 19's

due course of law guarantee. First, a court examines whether "the plaintiff ha[s] a liberty, property,

or other enumerated interest that is entitled to protection."[57] If no protected interest is asserted, the

court will lack jurisdiction over the suit.[58] If a protected interest is implicated, however, courts then

consider whether the defendant "follow[ed] due course of law in depriving the plaintiff of that

interest."[59] As noted above, the parties in this case agree that Plaintiff received trespass, harassment,

and stalking warnings from Sul Ross concerning at the very least Sul Ross's Alpine campus.[60] The

first substantive question is thus whether a protected interest is asserted by Plaintiff's allegations.

### a.        "Asserting" a Protected Interest

The first step in the due process analysis is whether Plaintiff asserts a protected interest. In

answering this question, the undersigned must determine whether Plaintiff's claimed constitutional

right is a recognized constitutional right, and then, if so, whether Defendants' conduct as alleged

implicates this constitutional right. Plaintiff first asserts that she has "a protected liberty interest in

public education."[61] Conversely, Plaintiff in her Response argues that Texas precedent assumes that

---

57. *Villarreal II*, 620 S.W.3d at 905.
58. *Paxton v. Dolcefino Commc'ns, LLC*, No. 07-20-00279-CV, 2021 WL 4477745, at *2 (Tex. App.—Amarillo Sept. 30, 2021).
59. *Villarreal II*, 620 S.W.3d at 905.
60. (Docs. 19 at 3; 20 at 8, 10–11).
61. (Doc. 19 at 4).

she "has a *property* interest protected by the due course of law clause of the Texas Constitution."[62]
However, as Defendants note, Plaintiff's First Amended Petition evidently hinges its § 19 claim on
there being a "protected *liberty*" interest in public education.[63]

 A liberty interest "denotes not merely freedom from bodily restraint but also the right of the
individual to contract, to engage in any of the common occupations of life, to acquire useful
knowledge, to marry, establish a home and bring up children, to worship God according to the
dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as
essential to the orderly pursuit of happiness by free men."[64] While courts generally assume that
students have a protected interest in public higher education for the purposes of § 19, it remains
unclear whether there actually is such an interest.[65] Oftentimes, the courts that have made this
assumption have done so to find that the process provided was constitutionally adequate.[66] The first
step of the due course of law analysis in the dismissal context generally "focuses on whether
dismissal from a university interferes with the student's liberty interest in his or her reputation and
employability, not on whether education is a protected liberty interest."[67] Yet, the parties each
dispute whether the "liberty interest" Plaintiff asserts is actually protected.[68] Thus, whether or not the
process given to Plaintiff was inadequate, a question to be addressed below, in the interest of
thoroughness, the undersigned will attempt to determine and not simply assume[69] that Plaintiff's
supposed interest in her graduate education at Sul Ross is recognized as constitutionally protected.

---

62. (Doc. 22 at 2 (emphasis added) (citing *Villarreal II*, 620 S.W.3d at 908)).
63. (Doc. 19 at 4 (emphasis added)).
64. *Bd. of Regents v. Roth*, 408 U.S. 564, 572 (1972).
65. *Burnett v. Coll. of the Mainland*, 994 F. Supp. 2d 823, 826 (S.D. Tex. 2014) (citing cases).
66. *Oliver v. Univ. of Tex. Sw. Med. Sch.*, No. 3:18-CV-1549-B, 2019 WL 536376, at *7 (N.D. Tex. Feb. 11, 2019).
67. *Villarreal II*, 620 S.W.3d at 905.
68. (Docs. 20 at 10; 22 at 2).
69. The Texas Supreme Court characterizes the famous "stigma" framework as constituting the entire first step of the due process analysis in the dismissal context. *Villarreal II*, 620 S.W.3d at 905. This ostensibly disorients the general analysis, since *Villarreal II* also indicates that the first step of the analysis is to (1) determine whether a dismissed plaintiff has asserted a liberty interest entitled to due process protection, then (2) examine whether the dismissal carried a stigma sufficient to "implicate a protected liberty interest." *Id.* at 906. Thus, the "assertion of a liberty interest" and the "implication of a liberty interest" steps are performed simultaneously. In other words, if a

Plaintiff identifies her protected interest as "a protected liberty interest in public education."[70] It is important to note the distinction between the protected interest in primary and secondary education, and an interest in higher—i.e., graduate—education. Texas state courts unanimously recognize a liberty interest in public education through the secondary level.[71] Beyond this, the Fifth Circuit has acknowledged the existence of a general protected liberty interest in higher education.[72]

Because Plaintiff claims that Defendants' actions prevent her from pursuing a graduate education at Sul Ross, Plaintiff's purported liberty interest must be in some aspect of higher education. The further question arises of whether this interest is in higher education at a specific campus, in-person education, or at each campus of a university. Plaintiff asserts she was "banned" from the Alpine campus via the harassment and trespassing warnings.[73] This ban, Plaintiff alleges, violated her constitutional right to obtain a graduate education. Yet, as Defendants acknowledge, Plaintiff's pleadings are devoid of any allegation that she was prohibited from entering any of Sul Ross's other campuses.[74] None of Plaintiff's briefings allege that the warnings forbid her from entering other Sul Ross or other universities or that she cannot continue her education online.

The undersigned holds that Plaintiff has not sufficiently alleged a protected liberty interest in graduate education, whether in-person or at a specific campus. Some courts have opined that, where

---

liberty interest is asserted, and said liberty interest is implicated, then the trial court must proceed to determine whether due process was afforded in depriving the plaintiff of his interest. Because the parties dispute whether the liberty interest asserted here is recognized as protected, the undersigned separates the inquiries.

70. (Doc. 19 at 4).

71. *See Stafford Mun. Sch. Dist. v. L.P.*, 64 S.W.3d 559, 562 (Tex. App.—Houston [14th Dist.] 2001).

72. *See Plummer v. Univ. of Hous.*, 860 F.3d 767, 773 (5th Cir. 2017) (citing *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929–30 (Tex. 1995)).

73. (Doc. 19 at 3).

74. Defendants attach the warnings, the validity of which Plaintiff does not dispute, to their Motion to Dismiss. (Docs. 20-2, 20-3). The undersigned examines these documents because Plaintiff specifically refers to each of them, and the trifecta is central to Plaintiff's claims. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (defendant including the documents "merely assists the plaintiff in establishing the basis of the suit, and the court in making the determination of whether a claim has been stated"). The trespass warning references "Sul Ross" as the property owner, with the address reading "Alpine, TX." (Doc. 20-2 at 2). The trespass warning in particular notes that Plaintiff is "hereby warned and places on notice that [she] cannot enter upon or remain on the above property," lest she be subject to arrest and charged with criminal trespass. (*Id.*). Likewise, the harassment warning pertains to communications by Plaintiff to Defendant Kara. (Doc. 20-3 at 2).

an education program is held only at a single campus, and a student is trespassed from entering said campus, the student may be prevented from attending the education program, even though other campuses may be available.[75] Others have found that expulsion and 24-hour trespass may constitute an infringement upon a student's liberty interest.[76] While Plaintiff's trespass was allegedly indefinite and throughout all hours of the day, Plaintiff would still have to argue that the trespass warning impaired her pursuit of her graduate education. Plaintiff does not claim here that her graduate program is only available at the Alpine campus, or that, in the event it is, in-person education is necessary to pursue it. Even though all facts are to be interpreted in the light most favorable to Plaintiff, the undersigned encounters no relevant facts to interpret. All that is pleaded is that Plaintiff attended graduate school at Sul Ross's Alpine campus, and that she can no longer lawfully access it in-person. To the extent Plaintiff seeks recognition of a constitutional right to education a specific campus or to do so in-person, her allegations are insufficient.[77] The undersigned finds no reason to recognize such a right at this time. Therefore, the undersigned cannot hold that Plaintiff has pleaded an impairment on her right to pursue a graduate education in-person or at the Alpine campus specifically.

Proceeding as though Plaintiff has sufficiently pleaded a protected liberty interest in graduate education generally, the undersigned briefly touches upon Plaintiff's new pleadings indicating a protected property interest. Plaintiff purports to assert a *property* interest in higher education in her

---

75. *See, e.g.*, *R.W. v. Columbia Basin Coll.*, No. 4:18-CV-5089-RMP, 2019 WL 13201974, at *2–5 (E.D. Wash. Oct. 4, 2019), *overruled on other grounds*, 842 F. App'x 153 (9th Cir. 2021) (unpublished).
76. *Hongoli Pan v. Texas*, No. 05-13-00321-CR, 2014 WL 1022355, at *2 (Tex. App.—Dallas Mar. 4, 2014) (mem. op.).
77. Defendants assert Plaintiff already conceded in her Original Petition that she attended Sul Ross remotely from El Paso. (Doc. 20 at 11). The passage in the Original Petition Defendants cite does not confirm this. Merely, the paragraph discusses El Paso County as being a proper venue and omits allegations concerning in-person or remote attendance. (Doc. 1-6 at 1). The First Amened Petition implies she has an Alpine residency, as she states that "she will forever be known in the small town of Alpine." (Doc. 19 at 4). If Plaintiff resides in El Paso, it is difficult to see how she would be known as anything, good or bad, in Alpine. With no substantiated reason to believe Plaintiff attended Sul Ross remotely, the undersigned proceeds as though Plaintiff attended her education in-person.

Response.[78] As a preliminary matter, asserting a claim for the first time in a Response is improper.[79] This argument should therefore be rejected. Notwithstanding this, where a plaintiff is determined to have a protected liberty interest, courts have been reluctant to consider whether the same individual would have a protected *property* interest in the same.[80] Nevertheless, in the interest of thoroughness, the undersigned addresses whether a property interest in graduate education could possibly be asserted.

A property interest entails a vested, "legitimate claim of entitlement," more than a "mere unilateral expectation."[81] "When an interest 'is predicated upon the anticipated continuance' of an existing law and is 'subordinate to' the legislature's right to change the law and 'abolish' the interest, the interest is not vested."[82] These rights, unlike liberty interests, are derived from sources independent of the federal Constitution, such as state law.[83]

The undersigned concludes that Plaintiff has not demonstrated that she has a protected property interest in higher education. One federal district court has concluded there is a "protected property interest in higher education."[84] However, the passage from the Fifth Circuit cited by that court denotes only that there is a "*liberty* interest in [] higher education."[85] Indeed, the undersigned has not detected, and Plaintiff has not cited, any authority clearly supporting the proposition that she has a protected property interest in higher education.[86] The Fifth Circuit has further observed that

---

78. (Doc. 22 at 2).
79. *See Halter v. Allmerica Fin. Life Ins. & Annuity Co.*, No. Civ.A. 98-0718, 1998 WL 516109, at *4 (E.D. La. Aug. 19, 1998); *Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2013 WL 655059, at *7 n.7 (N.D. Tex. Feb. 5, 2013).
80. *See, e.g.*, *Than*, 901 S.W.2d at 930 n.1.
81. *Tex. Div. of Motor Vehicles v. Fry Auto Servs.*, 584 S.W.3d 138, 144 (Tex. App.—Austin 2018) (citations and quotation marks omitted).
82. *Tex. Dep't of State Health Servs. v. Crown Distrib. LLC*, 647 S.W.3d 648, 655 (Tex. 2022) (quoting *City of Dallas v. Trammell*, 101 S.W.2d 1009, 1013 (Tex. 1937)).
83. *See Roth*, 408 U.S. at 577.
84. *See Doe v. Univ. of Tex. Health Sci. Ctr.*, No. H-21-1439, 2021 WL 5882625, at *8 (S.D. Tex. Dec. 13, 2021).
85. *See Plummer*, 860 F.3d at 773 (emphasis added).
86. *See Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, No. 5:20-CV-232-H-BQ, 2021 WL 5277556, at *14 (N.D. Tex. July 30, 2021), *report and recommendation adopted in relevant part*, No. 5:20-CV-232-H-BQ, 2021 WL 4316566 (N.D. Tex. Sept. 23, 2021).

Texas has yet to recognize a property interest in "graduate higher education."[87] In particular, Texas law "makes no [] provision for undergraduate or graduate education at state universities," a category to which Sul Ross indubitably belongs.[88] The uncertainties elsewhere throughout the country on federal due process grounds lead the undersigned to err on the side of caution in recognizing new, unprecedented property rights.[89] Accordingly, the undersigned is inclined to conclude that there is no present protected property interest in graduate-level education under Texas law.

On this point, the parties debate the applicability of *Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899 (Tex. 2021) [hereafter *Villarreal II*]. In that case, Ivan Villarreal ("Villarreal") was a student at Texas Southern University's Thurgood Marshall School of Law ("Texas Southern"). After failing to maintain the required grade point average, Texas Southern dismissed Villarreal for two years, after which he sued Texas Southern for inter alia deprivation of his liberty and property without due course of law. The state appellate court in *Villarreal v. Tex. S. Univ.*, 570 S.W.3d 916, 922 (Tex. App.—Houston [1st Dist.] 2018) [hereafter *Villarreal I*], found that Villarreal possessed a "liberty interest in a graduate education," and that his allegations sufficiently implicated it. On appeal, the Texas Supreme Court held that the *Villarreal I* court of appeals "misunderst[ood] the nature of the liberty analysis courts have employed" in the area of dismissal from higher education.[90] Specifically, the Texas Supreme Court reviewed case law invoking a special "stigma" framework[91] in the dismissal context.

Relying on earlier Texas Supreme Court precedent, the Court recognized that the "stigma framework [is instead used] to examine the due course of law protection for a student dismissed from a state university."[92] The Court concluded that the protected liberty interest from dismissal is "in his

---

87. *Plummer*, 860 F.3d at 773 (citing *Than*, 901 S.W.2d at 930 n.1).
88. *Anyadike v. Vernon Coll.*, No. 7:15-cv-00157-O, 2016 WL 107901, at *7 (N.D. Tex. Jan. 11, 2016).
89. *See Doe v. White*, 440 F. Supp. 3d 1074, at 1088–89 (N.D. Cal. 2020) (observing the area as "unsettled").
90. *Villarreal II*, 620 S.W.3d at 905.
91. This framework will be discussed thoroughly in the next subsection.
92. *Villarreal II*, 620 S.W.3d at 906 (citing *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929–30 (Tex. 1995)).

or her reputation and employability."[93] Thus, *Villarreal II* stands to illustrate that, where a student is dismissed from a state-funded higher educational institution, a stigma may follow the student *to other higher educational institutions*. The constitutionally protected liberty interest in the educational dismissal context lies not in the higher education at a particular institution, but overall and generally as a matter of access and attainability.[94] It thus appears to be settled case law that citizens generally have a protected liberty interest in higher education, but that the liberty interest at issue in dismissal cases is one of the student's reputation and employability.[95]

For the parties' individual propositions, *Villarreal II* is not instructive. Defendants attempt to utilize *Villarreal II* to explain that Plaintiff does not have a protected liberty interest in higher education. In doing so, Defendants quote the following passage:

> If the people of Texas want a fundamental right to higher education, they can create one by amending our Constitution. It is not our role as judges to adopt such a right for them. As a matter of Texas constitutional law, therefore, we decline to recognize substantive protections for educational rights that emanate implicitly from the due course of law clause.[96]

However, the quoted portion of *Villarreal II* pertains to the Court's discussion of the student's substantive due process rights, indicated by the last sentence referring to "substantive" as opposed to procedural protections.[97] Additionally, the passage appears in the section of *Villarreal II*'s discussion of "substantive due course of law." The procedural and substantive due process inquiries are separate and must not be confused. As the undersigned has concluded above, Plaintiff at no point here asserts a substantive due process claim as to her higher education. Indeed, Plaintiff claims only that she is entitled to due process protection for her liberty interest in higher education premised upon inadequate hearings or the lack thereof. These are distinctly procedural due process issues.

---

93. *Id.* at 905.
94. *See Than*, 901 S.W.2d at 930 (exemplifying that a "medical student charged with academic dishonesty faces not only serious damage to his reputation but also the loss of his chosen profession as a physician").
95. *Villarreal II*, 620 S.W.3d at 905.
96. (Doc. 20 at 10 (quoting *Villarreal II*, 620 S.W.3d at 910)).
97. *Villarreal II*, 620 S.W.3d at 910.

Conversely, however, Plaintiff is mistaken in her attempt to use *Villarreal II* to support the proposition that she inherently has a protected *property* interest in higher education. Quoting the same passage as Defendants, Plaintiff argues that a preceding paragraph stating that the Texas Supreme Court "assume[d] [Villarreal] does" have a property interest protected by § 19 demonstrates a need for this Court to "must assume the same as well."[98] The Court, as noted above and understood by Defendants, made the *arguendo* assumption that Villarreal possessed a property interest so that it could dispose of the case at the "process due" prong of the analysis. In doing so, the Court determined Villarreal "received at least as much process" as "required in connection with his dismissal."[99] The Court did not expressly state that an *arguendo* assumption must be applied as a matter of course by all trial courts. Nor did the Court suggest that such should be done at any given stage of the proceedings. The undersigned detects no reason to imply from the ether a cognizable property interest in higher education.

In conclusion, *Villarreal II* does not benefit either party at this stage concerning whether Plaintiff has asserted an interest recognized as protected by the courts. At best, *Villarreal II* implies that the first prong of the due process analysis in the educational dismissal context concerns whether a plaintiff has asserted a stigma—that is, whether she was deprived of a protected interest in her reputation and employability due to the dismissal. The second prong then involves a discussion of the process that was due from the institution dismissing her. Plaintiff asserts liberty and property interests in graduate education at a specific campus, which are not recognized under Texas law. Her allegations of a "stigma" instead appear to plead a reputation-based due process claim.[100] Therefore, the undersigned will proceed with the stigma portion of the analysis as though Plaintiff asserts a liberty interest in her reputation and employability.

---

98. (Doc. 22 at 2).
99. *Villarreal II*, 620 S.W.3d at 908.
100. (Doc. 19 at 4).

### b.       Implication of Protected Interest / Stigma Analysis

Plaintiff's factual allegations that she will suffer a "stigma" allow the undersigned to continue with the first prong of the due process analysis. The undersigned turns to the next question of whether Defendants' alleged conduct implicates this interest.

To do so, "Defendants' conduct" mut be defined. The First Amended Petition is ambiguous in its presentation. As the undersigned concludes above, Plaintiff has not alleged her graduate education cannot continue despite the trespass warnings. Plaintiff also cannot assert a violation of her liberty interest based on her inability to pursue her program in-person. Only if Plaintiff was dismissed from campus can the dismissal analysis proceed.

It appears Plaintiff asserts she was dismissed from campus as the basis for her due course of law claim.[101] Plaintiff does not allege her education at Sul Ross was terminated, or that she was unenrolled as a result of the warnings. Thus, as noted above, it is difficult to discern how Plaintiff, if she is still enrolled at Sul Ross, was "dismissed" or "expelled" from her educational program. The parties do agree that she is unable to lawfully enter campus due to the trespass warning. Whether a prohibition on physical presence can substantiate an impediment on the education itself is unclear. The undersigned does not believe Plaintiff has sufficiently pleaded a dismissal from campus.

Further, Plaintiff appears to argue that Defendant Kara is responsible for the harassment warning.[102] Plaintiff elsewhere asserts that Sul Ross trespassed her for "hav[ing] an affair with [her] professor."[103] Whether the harassment warning was related to the dismissal should be out of the question, as Plaintiff only claims that she was trespassed and therefore banned from campus. Plaintiff maintains and Defendants concede that the trespass warning was directly related to the affair Plaintiff

---

101. (Doc. 19 at 4 (stating Plaintiff was harmed when she was "suspended or expelled from campus" via the warnings)).
102. (Doc. 20-2 at 2).
103. (Doc. 22 at 2 (citing Doc. 19 at 4)).

allegedly had with Professor Ryan.[104] It is difficult to see how Kara's harassment warning prevents her from pursuing her education at Sul Ross. Therefore, Plaintiff can be said to base her due process claim in major part on the trespass warning and alleged resulting dismissal.

Assuming the warnings effectively constituted a dismissal, the undersigned continues down the stigma analytical track. Where there is a dismissal from education, courts in examining due process satisfaction look to whether the dismissal imposes a stigma on the student's continuation of his graduate education.[105] Under the stigma framework, "[c]ourts frequently conclude that disciplinary suspensions and dismissals carry sufficient stigma to implicate a protected liberty interest."[106] Thus, "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," due process requirements must be satisfied.[107]

"Dismissals from educational institutions generally fall into two categories: disciplinary and academic."[108] There is a "significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct."[109] Academic dismissals tend to "arise from a failure to attain a standard of excellence in studies whereas disciplinary dismissals arise from acts of misconduct."[110] In academic dismissals, for example, factors like hygiene and timeliness can be as "important factors in a school's determination of whether a student will make a good medical doctor as the student's ability to take a case history or diagnose an illness."[111] Essentially, the category of dismissals which are "academic" is "very broad," relegating disciplinary dismissals to but a narrow range of cases.[112]

---

104. (Docs. 19 at 4; 20 at 7–8).
105. *Than*, 901 S.W.2d at 930.
106. *Villarreal II*, 620 S.W.3d at 906 (collecting cases).
107. *Stafford Mun. Sch. Dist. v. L.P.*, 64 S.W.3d 559, 563 (Tex. App.—Houston [14th Dist.] 2001) (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)) (quotation marks omitted)).
108. *Villarreal II*, 620 S.W.3d at 906.
109. *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86 (1978).
110. *Than*, 901 S.W.2d at 931.
111. *Horowitz*, 435 U.S. at 91 n.6.
112. *Allahverdi v. Regents of the Univ. of N.M.*, No. Civ 05-277 JB/DJS, 2006 WL 1314807, at *13 (D.N.M. Apr. 25, 2006) (conducting survey of cases).

In this case, Plaintiff claims she was dismissed because she "had an affair with [her] professor."[113] Any incidence of extramarital affairs with a professor carries obvious overtones of wrongful conduct.[114] The question is whether this conduct is the more ubiquitous type of wrongful to fall into the typical category, or instead a more idiosyncratic type. Here, refusing to participate in infidelity could be regarded as a basic requirement for graduate education. The faculty-student relationship has been traditionally fallen outside of the Judiciary's due process oversight.[115] The Supreme Court of the United States has observed that the educational process "centers around a continuing relationship between faculty and students, 'one in which the teacher must occupy many roles—educator, adviser, friend, and, at times, parent-substitute.'"[116] One notable omission from the list is an alleged paramour.

Infidelity may have many advantages; for example, those engaged in extramarital affairs[117] with a professor may be able to receive a boost in grades or deference to the student's judgment.[118] Additionally, a professor engaged in a sexual relationship with a student may be inclined to provide a non-meritorious preference to the student.[119] These possible benefits reflect an entirely academic advantage achieved by non-academic means. Hence, this dismissal is one of a blended nature.[120]

---

113. (Doc. 19 at 4).

114. *Tex. Tech. Univ. Health Scis. Ctr. v. Enoh*, 545 S.W.3d 607, 622 (Tex. App.—El Paso 2016) (citing cases finding credit card misuse and cheating on exams to be disciplinary matters).

115. *See Horowitz*, 435 U.S. at 90 ("[W]e decline to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing.").

116. *Id.* (quoting *Goss v. Lopez*, 419 U.S. 565, 594 (1975) (Powell, J., dissenting)).

117. Perhaps obviously, the undersigned also casts no aspersion relating to whether Professor Ryan's own conduct would be academic or disciplinary. Upon cursory review, the undersigned would be inclined to believe that a dismissal of Professor Ryan for his affair would be disciplinary rather than academic. Professors may have less opportunity to reap the latent benefits potentially available to students. As one court has observed, "disciplinary dismissals are objective in nature and relate to rules of conduct rather than a [professor's] professional abilities." *Allahverdi*, 2006 WL 1314807, at *14. Sul Ross undisputedly found Professor Ryan in fact to have violated the university's rules of conduct. (Docs. 19 at 2; 20 at 7).

118. *See* Elaine D. Ingulli, *Sexual Harassment in Education*, 18 Rutgers L.J. 281, 330 (1987) (case study of university anti-harassment policies).

119. *Id.* at 334.

120. The undersigned makes no moral judgment or admonition in this Report and Recommendation. Rather, the undersigned is affirming the awareness of the benefits a faculty-student sexual relationship may entail, in that such could avail the student to academic prowess which would otherwise be unavailable.

Given the dismissal's ambiguity, the undersigned finds it best to err on the side of academics.[121] Therefore, the undersigned believes that the trespass warning, if considered a dismissal, would be academic.[122]

The undersigned now considers whether Plaintiff has pleaded a stigma based upon this dismissal. Academic dismissals are less likely to accompany a stigma sufficient to implicate a liberty interest.[123] Plaintiff claims her academic dismissal accompanies the stigma of a student who engages in extramarital affairs with professors. This stigma, however, is not alleged to be likely to cause Plaintiff serious damage to her reputation as an honest or hardworking student.[124] While an academic dismissal "may create practical difficulties for a future academic or professional career," the Fifth Circuit has found academic dismissals to not "seriously damage a student's reputation for honor or integrity."[125] Plaintiff, as Defendants note, has not alleged she is unable to obtain her Sul Ross graduate education at another campus, or otherwise seek admission to another graduate program in the same field.[126] Plaintiff only alleges in a conclusory fashion that the "effect" of the dismissal is "far reaching and significant, affected [] Plaintiff's ultimate career options, earning potential, and community prestige in incalculable and negative ways."[127] Each of these allegations are vague and are not based on purported facts. Therefore, this stigma does not implicate Plaintiff's liberty interest

---

121. *Allahverdi*, 2006 WL 1314807, at *13 ("[T]he Supreme Court has expressed a strong desire not to interfere in the academic relationship between student and teacher that is vital for the continuing health of education in our country.").

122. Defendants claim that the trespass warning, the primary alleged catalyst for Plaintiff's dismissal claim, was the result not of her alleged affair, but rather her sending the "closure letter" to Professor Ryan after Defendants recommended she not do so. (Doc. 20 at 7). If this is the case, and Plaintiff was trespassed because she did not follow a Sul Ross no-contact recommendation, the trespass warning/dismissal would unquestionably constitute a disciplinary action for misconduct. However, Plaintiff only alleges the stigma attached comes from her affair, and not the closure letter. (*See* Doc. 19 at 4). Therefore, only the affair can be considered a cause of her trespass-dismissal for the stigma analysis.

123. *See Villarreal II*, 620 S.W.3d at 906.

124. *See Than*, 901 S.W.2d at 930 (dealing with a disciplinary dismissal).

125. *Villarreal II*, 620 S.W.3d at 907.

126. *See id.*

127. (Doc. 19 at 4).

in her employability and academic reputation. Nevertheless, the undersigned turns to the question of the process due under § 19 of the Texas Constitution.

### ii.      Process Due

The final step of the due process analysis here involves the question of whether Plaintiff was afforded due process before she was trespass-dismissed from Sul Ross's Alpine campus. Plaintiff implies that a hearing was required before she was trespass-dismissed.[128] The deprivation by governmental action "of a constitutionally protected interest in life, liberty, or property is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*."[129] To demonstrate inadequate process, courts engage in an inquiry into "the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law."[130]

### a.      Academic Dismissal

Because the undersigned concludes that any purported "dismissal" would have been academic, the undersigned applies a far less stringent test for due process than would be utilized for a disciplinary dismissal.[131]  To determine the amount of process due in an academic dismissal, courts require at least some "meaningful notice and an opportunity to respond."[132] This requirement by no means entails a hearing. Therefore, to the extent Plaintiff's First Amended Petition § 19 due course of law claim is premised upon a hearing *requirement*, it is incorrect.

Plaintiff asserts that the trespass, harassment, and stalking warnings are all "unlawful." Yet, her First Amended Petition is devoid of any explanation as to how this is the case. The only conceivable logic is that the warnings were unlawful—read, unconstitutional—because they deprived

---

128. (*Id.* at 3–4).
129. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quotation marks omitted) (emphasis in original).
130. *Id.* at 126.
131. *Burnett v. Coll. of the Mainland*, 994 F. Supp. 2d 823, 826 (S.D. Tex. 2014) (noting that procedural requirements for academic decisions are "far less stringent" than those attached to disciplinary decisions).
132. *Davis v. Mann*, 882 F.2d 967, 975 (5th Cir. 1989).

her of her due process rights. This logic is circular and cannot buttress her § 19 claim. Plaintiff's statement that the "lack of hearing procedures failed to give [her] a meaningful opportunity to be heard" is conclusory.[133]

If creative grafting is undertaken, perhaps Plaintiff does provide some factual albeit contradictory allegations. Plaintiff claims that, in July 2020, following her purported affair, Plaintiff complained to Sul Ross concerning Professor Ryan's alleged exploitation and sexual harassment. She contends that the university found that Professor Ryan violated the Sul Ross Sexual Misconduct Policy. Thereafter, "it was[] recommended [by Defendant DeVoll] that no communication" be "had between [] Plaintiff and [Professor Ryan]."[134] The undersigned holds that this admonition[135] by DeVoll to Plaintiff would appears to constitute notice of the improper nature of any future communications to Professor Ryan. Although it was "only" recommended, this no-contact recommendation certainly communicates that Plaintiff may face some backlash for doing so.

Regarding the statement that she had no opportunity to respond, Plaintiff does not exclaim that she attempted to respond to DeVoll's admonition or that she would have needed or wanted to do so. Nor does she allege that she was unable to respond to DeVoll's admonition before sending her trespass-inducing "closure letter." The only fact in Plaintiff's favor under the lower standard is that Defendants have not disputed she was not given an opportunity to respond. Accordingly, even when viewing all facts in the light most favorable to Plaintiff, the First Amended Petition lacks sufficient facts to indicate that Plaintiff did not receive due process for her supposed academic dismissal.

---

133. (Doc. 19 at 4).
134. (*Id.* at 2).
135. Plaintiff provides Defendant DeVoll's alleged email and a purported copy of the Notice of Final Outcomes from her Title IX complaint as exhibits to her Response. (Docs. 22-1, 22-2). Defendants challenge this, as Plaintiff's "inclusion of new factual material or allegations is improper." (Doc. 23 at 5). It is indeed true that a plaintiff cannot "include[] new facts and allegations in response to a motion to dismiss." *Powell v. Dallas Morning News LP*, 610 F. Supp. 2d 571, 582 (N.D. Tex. 2009) (terming it a "moving target" approach). Thus, it appears the email, which is not referenced in the First Amended Petition, is improperly brought before the Court and should not be considered. Plaintiff does mention in her live complaint the Notice of Final Outcomes. (Doc. 19 at 2). This is not a new factual allegation. In any event, in the interest of thoroughness and because Defendants consider DeVoll's purported email in their Reply, the undersigned makes notes of the exhibits as necessary. (Doc. 23 at 5).

### b.        Disciplinary Dismissal

If it assumed *arguendo* that Defendants' trespass warning constituted a disciplinary dismissal and Plaintiff suffered or will suffer a stigma because of it, the undersigned must decide whether Plaintiff would have received due process under the heightened standard.

In the university disciplinary proceeding context, "the amount of process due . . . is based on a sliding scale that considers three factors."[136] These factors are (1) "the student's interests that will be affected"; (2) "the university's interests, including the burden that additional procedures would entail"; and (3) "the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or substitute procedural safeguards."[137] As between disciplinary dismissals and academic dismissals, the United States Supreme Court has noted that the federal Constitution "may call for hearings in connection with the former but not the latter."[138] The length of suspension can also impact the procedural formalities required.[139] Permanent suspensions or dismissals, for example, tend to require "more formal procedures" than temporary actions.[140] "At a minimum, when university officials seek to sanction a student for misconduct, [the] due course of law guarantee requires oral or written notice of the charges against the student and, if the student denies them, an explanation of the evidence the authorities have and an opportunity to present his or her side of the story."[141] "As a flexible standard, however, the process due may vary depending on the competing interests of the student and the university."[142]

In this case, for the first factor, Plaintiff complains of her interest in cross-examining the "Complainant," most likely referring to the alleged sponsor of the harassment and stalking warnings,

---

136. *Plummer v. Univ. of Houston*, 860 F.3d 767, 773 (5th Cir. 2017).
137. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).
138. *Horowitz*, 435 U.S. at 87.
139. *See Caldwell v. Univ. of N.M. Bd. of Regents*, 510 F. Supp. 3d 983, 1054 (D.N.M. 2020) (citing *Goss v. Lopez*, 419 U.S. 565, 584 (1975)).
140. *See Oliver v. Univ. of Tex. Sw. Med. Sch.*, 3:18-CV-1549-B, 2019 WL 536376, at *9 (N.D. Tex. Feb. 11, 2019) (citation omitted).
141. *Than*, 901 S.W.2d at 931.
142. *Id.*

Defendant Kara. If Plaintiff is referring to a right to cross-examine an alleged stalking or harassment victim prior to being dismissed from campus, she does not provide any legal authority for this position. In any event, as noted above, it is not apparent how harassment and stalking warnings constitute a dismissal. Indeed, Plaintiff primarily alleges and the undersigned has already concluded that the trespass warning is the only tangible source of dismissal in this case. The First Amended Petition includes no authority supporting the proposition that Plaintiff has a right to cross-examine the individual responsible for issuing a trespass warning prior to its issuance. Plaintiff's remaining purported interest is in receiving a hearing before or after being trespassed.[143]

These interests must be weighed against the university's interests in enacting additional procedures before trespassing a student from campus. Defendants argue that Sul Ross has a "clear interest in protecting its employees and allowing them to avail themselves of law enforcement's protection."[144] This interest refers not only to the trespass warning, but also impliedly to the harassment and stalking warnings. Regardless, protecting one's employees and availing oneself of the protection of law enforcement when one feels harassed or stalked is a legitimate interest.[145] Sul Ross has an obvious interest in protecting its employees. Providing the procedures Plaintiff requests, cross-examination of Defendant Kara and a formal opportunity to respond, would naturally present some time and resource burdens. Exactly much of a burden this would represent is not addressed by Defendants.

In balancing these interests, the undersigned concludes that Plaintiff, if the trespass warning constituted a disciplinary dismissal, was deprived of due process. Plaintiff asserts she received no opportunity to respond pre-warning, and evidently will not receive one. Defendants do not dispute that she has neither received a hearing nor an opportunity to respond. Sul Ross certainly has a strong

---

143. *See id.* at 932.
144. (Doc. 20 at 11).
145. *Walsh v. Hodge*, 975 F.3d 475, 484–85 (5th Cir. 2020).

interest in issuing a trespass warning when an employee feels threatened, and requiring a pre-trespass hearing and confrontation poses conceivable risks to the employee. In that same vein, if universities forbid students indefinitely from campus, and never provide an opportunity for students to respond or challenge the charges against them, students' due process rights may very well exist only *de jure*.[146] Employees may in such a scenario be able to effectively dismiss students from campus with little dissent.

It is undisputed that Defendants issued their perpetual trespass warning in November 2020. Plaintiff admits that Defendants recommended she not contact Professor Ryan after her Title IX proceedings concluded, but sent the closure letter anyway. Thus, to the extent she was entitled to a pre-trespass opportunity to be heard, the email DeVoll allegedly sent to Plaintiff recommending she refrain from contacting Professor Ryan may constitutes advance written notice. Yet, by the time Plaintiff filed her First Amended Petition, over 18 months had passed, seemingly with no hearing or opportunity to challenge Defendant Kara's complaints or concerns. Even assuming DeVoll's admonition and the trespass and other warnings constitute "oral or written notice of the charges against [her]," Defendants have undisputedly failed to provide Plaintiff "an opportunity to present his or her side of the story."[147] Defendants' actions here, while sufficient to meet the lower standard in an academic dismissal context, do not overcome the higher, more formalized standard applied to indefinite disciplinary dismissals. Thus, in the unlikely scenario the trespass warning is considered a disciplinary dismissal, Defendants failed to provide minimum due process.

Plaintiff has not adequately pleaded the deprivation of a protected liberty interest. Even if she has, unless the Court finds that the trespass constituted a disciplinary dismissal, Defendants afforded

---

146. *See Caldwell*, 510 F. Supp. 3d at 1050 (finding "rudimentary" due process only satisfied where plaintiff, while not given a hearing, was provided four meetings and conferences with charging officials within twenty-five days of suspension).
147. *Than*, 901 S.W.2d at 931.

her sufficient procedural due process. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's § 19 claim against all Defendants.

### iii. Participation by Individual Defendants and Board of Regents

Should the Court find that Individual Defendants, Sul Ross, and Board of Regents are not immune to Plaintiff's claims; she has properly pleaded a protected liberty interest and stigma; and her procedural due process rights were violated, Defendants maintain there is yet another reason to dismiss part of her § 19 claim. Defendants in particular argue that Plaintiff makes "no allegation that [Individual Defendants and Board of Regents] directed [Sul Ross's] decisions related to her hearings, or alleged lack thereof."[148]

For a supervisory official to be held liable, a plaintiff must demonstrate that they (1) "affirmatively participate[d] in acts that cause constitutional deprivation"; or (2) "implement[ed] unconstitutional policies that causally result in [the] plaintiff's injury."[149] In the policy context, "the supervisory employee must implement a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation; or he must know that the system is so deficient as to be unconstitutional, fail to properly attempt to correct it, and cause the plaintiff's injuries by his inaction."[150]

Plaintiff's due course of law claim rests on Sul Ross's alleged "policy for not conducting hearings" prior to the generating the warning trifecta.[151] Sul Ross's responsibility for implementing the policy and depriving Plaintiff of her rights is clearly alleged. Less clear, however, is what role Board of Regents or Individual Defendants had in this policy. While Plaintiff does assert elsewhere, however nakedly, that Individual Defendants may have released the warnings, Plaintiff does not

---

148. (Doc. 20 at 12–13).
149. *Mouille v. Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992).
150. *Henderson v. Anderson*, No. H-09-548, 2009 WL 10673173, at *10 (S.D. Tex. July 30, 2009) (quotation marks and citations omitted).
151. (Doc. 19 at 4, 5).

allege that either Individual Defendants or Board of Regents is responsible for the policy of issuing warnings without hearings. In other words, whether certain of Defendants released the warnings is a separate factual allegation from whether those same Defendants are responsible for the policy setting the procedures for releasing the warnings.[152] Plaintiff notes in the section labeled "Title IX Retaliation" that Sul Ross's "policy and practices [are] set by [] Board of Regents."[153] This statement alone, even if it were incorporated into the more aptly named "Due Course of Law" section, is conclusory. No facts are pleaded to support the assertion that Board of Regents actually participated in the creation of the policy. The undersigned finds this insufficient to implicate Board of Regents in the implementation of the allegedly unconstitutional policies in effect at Sul Ross.

On the basis of personal participation, therefore, Plaintiff's First Amended Petition does not adequately plead a due course of law claim against Individual Defendants and Board of Regents. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's due course of law claim against Individual Defendants and Board of Regents.

### iv.      Merits Conclusion

If the Court finds that Defendants are not immune, the undersigned concludes that Plaintiff has not adequately pleaded that she has a protected liberty interest in pursuing an in-person education at Sul Ross's Alpine campus, or that she incurred a sufficient stigma on her reputation and employability. Even if the Court finds that she has, and that the warning trifecta of some of Defendants' alleged conduct produced a stigma on Plaintiff's ability to continue her graduate education, unless the Court concludes the warnings were a disciplinary dismissal, the undersigned also holds that Defendants afforded her sufficient procedural due process. Because Plaintiff has not sufficiently pleaded her due course of law claim under § 19 of the Texas Constitution, her claim

---

152. *Justice v. Kennedy*, No. C-12-005, 2012 WL 4718633, at *5 (S.D. Tex. Sept. 12, 2012).
153. (Doc. 19 at 6).

cannot proceed. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's due course of law claims against all Defendants.

### 3.    Available Damages

Even if the Court were to determine that Defendants are not immune and Plaintiff has a facially viable claim under § 19, Defendants raise some concerns with regards to the available damages Plaintiff seeks.

Defendants contend that Plaintiff has no implied right of action for damages against government entities for violations of the Texas Constitution. Plaintiff does not respond to this argument. Under § 19, there is "no implied private right of action for damages against governmental entities."[154] Where a plaintiff seeks money damages pursuant to § 19, the plaintiff can only maintain his suit if he seeks relief other than money damages.[155]

Plaintiff expressly requests, in part, "damages in an amount to be determined at trial" among other monetary sums as part of her due course of law claim. Yet, she also seems to concede that violations of such provisions are enforceable through "an implied right of action against a state agency when seeking *equitable* relief."[156] Her § 19 suit is against, presumably, all Defendants, including Sul Ross and Board of Regents. As discussed above, Sul Ross and Board of Regents are agents of the State of Texas. Therefore, even if the Court were to find sufficient facts to support her due course of law claim, Plaintiff cannot recover monetary damages against these two Defendants under § 19 as a matter of law.[157] Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's due course of law claim against Defendants Sul Ross and Board of Regents to the extent it requests damages.

---

154. *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (quotation marks omitted); *Tex. Dep't of Fam. & Protective Servs. v. E.R.*, No. 13-07-00390-CV, 2009 WL 401622, at *4 (Tex. App.—Corpus Christi Feb. 19, 2009) (mem. op.).
155. *See Hidalgo Cnty. v. Dyer*, 358 S.W.3d 698, 708 (Tex. App.—Corpus Christi 2011) (mem. op.).
156. (Doc. 19 at 4, 5 (emphasis added)).
157. *See Kinnison v. City of San Antonio*, 699 F. Supp. 2d 881, 891 (W.D. Tex. 2010).

**B.**     **Title IX Retaliation Claim**

Defendants also argue to dismiss the entirety of Plaintiff's Title IX retaliation claim. The undersigned turns to it now.

"Title IX prohibits sex discrimination by recipients of federal education funding."[158] The language of Title IX's anti-retaliation provision, and that which is present in Title VII, are similar and "should be accorded a similar interpretation."[159] Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."[160]

The questions before the Court are as follows: (1) Can Individual Defendants be sued as a matter of law?; (2) Are the allegations against Board of Regents and Sul Ross sufficient to maintain a Title IX retaliation claim?; and (3) Are the allegations against Board of Regents and Sul Ross sufficient to maintain a Title IX discrimination claim?

**1.**     **Individual Defendants**

At the outset, the undersigned agrees with Defendants that Title IX "has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."[161] Likewise, unless a party is a recipient of federal funds, Title IX liability does not extend to that party.[162] Title IX, therefore, does not provide a general basis for liability against individuals.[163] If Title IX were the only statute under which this lawsuit was brought, it would be prudent to dismiss this suit against any Individual Defendants. Plaintiff offers no assertion to the contrary.[164]

---

158. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005).
159. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 252 n.18 (5th Cir. 1997).
160. 20 U.S.C. § 1681(a).
161. *A.W. v. Humble Ind. Sch. Dist.*, 25 F. Supp. 3d 973, 986 (S.D. Tex. 2014).
162. *Pemberton v. W. Feliciana Par. Sch. Bd.*, No. 09-30-C, 2010 WL 431572, at *8 (M.D. La. Feb. 3, 2010).
163. *See Wije v. Tex. Woman's Univ.*, No. 4:14-CV-571-ALM-CAN, 2016 WL 11472335, at *14 (E.D. Tex. Feb. 5, 2016).
164. (*See* Doc. 22 at 2–3).

While Plaintiff's Title IX retaliation claim as outlined in her First Amended Petition is somewhat ambiguous, a closer inspection of the complaint's facts give insight on the relevant Defendants. She expressly claims that Sul Ross and Kara "retaliated" against her. Her claims that Defendants Sul Ross, Kara, Gallego, DeVoll, and Snyder "prevent[ed] [Plaintiff] from entering a public space based on actions she had taken as a protected person under Title IX" appear to instead relate to her First Amendment retaliation claim.[165]

Kara is an Individual Defendant. Plaintiff therefore cannot maintain a Title IX retaliation claim against her as a matter of law. To the extent that the other Individual Defendants, Gallego, DeVoll, and Snyder, are part of the Title IX retaliation claim, the same conclusion applies. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's Title IX retaliation claim against all Individual Defendants.

### 2.      Board of Regents

The First Amended Petition mostly appears to assert a Title IX retaliation claim against Sul Ross, but also alleges in the relevant section that Sul Ross's "policy and practices" were "set by [] Board of Regents."[166] Plaintiff implies in her Response that "SRSU" refers only to Sul Ross, and not also Board of Regents, a separate Defendant in this case.[167] In the interest of thoroughness, the undersigned will assume the Title IX retaliation claim applies to Board of Regents.

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action."[168] In order to establish a prima facie case of retaliation under Title IX, a plaintiff must allege that (1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) a causal connection

---

165. (Doc. 19 at 3).
166. (*Id.* at 6).
167. (Docs. 22 at 1–3; 19 at 2).
168. *Jackson*, 544 U.S. at 173.

exists between the protected activity and the adverse action.[169] Although Title IX actions are

typically brought in the employment context, Title IX's protections apply just as well to claims made

by individuals in their capacity as a student.[170] In the educational context, a plaintiff "must show that

the [university] or its representatives took an adverse action against her because she complained" of a

Title IX violation.[171]

In this case, the first two elements—protected activity and material adverse action—are not

materially in dispute. For the last element, according to Plaintiff, Board of Regents sets Sul Ross

policies and practices, "divert[s] Title IX complaints," and "institutionalize[s] a system by which

female victims of sexual exploitation and harassment are not provided equal educational

opportunities."[172] Defendants argue that Plaintiff's pleadings leave "unclear" how "the decision to

issue a criminal trespass warning in response to Plaintiff's October 25, 2020 [closure] email" resulted

from Board of Regents' conduct here.[173] Plaintiff's Response does not address this argument.

The undersigned finds that Plaintiff's allegations insufficiently illustrate causation.

Demonstrating causation in this case requires Plaintiff to allege that "the desire to retaliate was the

but-for cause of the adverse action."[174] Plaintiff admits that she participated in the Title IX hearing,

after which she was informed that she should not have communication with Professor Ryan.

Following the conclusion of this hearing, and several months later in October 2020, Plaintiff "wrote

and sent a closure letter" to Professor Ryan.[175] Examining the letter, Plaintiff describes such venereal

concepts as sexual encounters with and her love for Professor Ryan.[176]

---

169. *Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015) (unpublished).
170. *See, e.g.*, *Doe v. Prairie View A&M Univ.*, No. 4:17-CV-1957, 2018 WL 1947804, at *5–6 (S.D. Tex. Apr. 25, 2018) (applying Title IX to student's retaliation claim).
171. *Sanches v. Carrollton-Farmer Branch Ind. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011).
172. (Doc. 19 at 6).
173. (Doc. 20 at 14–15).
174. *Bonnewitz v. Baylor Univ.*, No. 6:21-cv-00491-ADA-DTG, 2022 WL 2688399, at *3 (W.D. Tex. July 12, 2022).
175. (Doc. 19 at 2, 3).
176. (Doc. 20-1 at 2–3).

The undersigned cannot see how the alleged actions taken against Plaintiff would have conceivably been solely attributable to Plaintiff filing her Title IX complaint against Professor Ryan, considering her closure letter. In other words, Plaintiff does not allege that the warnings being issued were necessarily epiphenomenal to her filing her Title IX complaint. Plaintiff's own assertions demonstrate that there is an intervening event after the filing of the Title IX complaint. In fact, there is a step missing, that of Plaintiff's "closure letter" to Professor Ryan. Plaintiff exclaims she made a Title IX complaint to Sul Ross by July 16, 2020, and that five days later on July 1, 2020, a "notice of final outcomes was made" in her case. She then says that she sent a closure letter on October 25, 2020, to Professor Ryan.[177]

By Plaintiff's own admission and pleadings, she was advised to refrain from contacting Professor Ryan following the conclusion of her Title IX hearing. That she was only "recommended" to not contact Professor Ryan is of no apparent significance. Plaintiff admits she sent a letter in contravention of this recommendation, only after which were the warnings issued.[178] Thus, from the facts alleged, the undersigned cannot infer that the filing of the Title IX complaint with Sul Ross against Professor Ryan was the but-for cause of the trespass and harassment warnings.[179] Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's Title IX retaliation claim against Board of Regents.

### 3.    Sul Ross

Defendants also contest the sufficiency of the pleadings of the Title IX retaliation claim against Sul Ross itself.[180] As with the allegations against Board of Regents, Defendants only

---

177. (Doc. 19 at 2, 3).
178. (*Id.* at 2–3).
179. *See Bonnewitz*, 2022 WL 2688399, at *3; *Muslow v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. 19-11793, 2020 WL 1864876, at *15 (E.D. La. Apr. 14, 2020) (requiring plaintiff to allege retaliation "because of complaints related to [harassment] *in education*.").
180. (Doc. 20 at 15).

substantively challenge the existence of a causal link between the trespass and harassment warnings and Plaintiff's purported Title IX protected activity.

As noted above, it would appear that Plaintiff asserts her Title IX complaint marked the commencement of her protective activity.[181] Defendants claim too much time had passed between the complaint and the issuance of the warnings. Plaintiff seemingly avoids answering the temporal proximity argument, instead arguing that, in contrast to Defendants' contention, a Title IX retaliation suit requires that she allege she suffered retaliation as a consequence of her participation in Title IX investigations and complaints.

The undersigned finds causation lacking as to Sul Ross as well. Establishing causation in retaliation claims also requires temporal proximity between the protected activity and the allegedly retaliatory action.[182] This temporal proximity "must be very close."[183] In this instance, Plaintiff's Title IX complaint was undisputedly filed with Sul Ross on July 16, 2020. Sul Ross issued its notice of final outcomes on July 21, 2020. Plaintiff, however, received her harassment, trespass, and stalking warnings on November 10, 2020. The lapse in time from July 16, 2020, until November 10, 2020, was nearly four months. It of course cannot be expected that Plaintiff can only plead a retaliation claim if the retaliation occurred the very next day after her protected activity. Nevertheless, Plaintiff supplies no reason as to why Sul Ross would remain dormant for four months before trespassing her from campus based on her Title IX complaint.[184] Four months, standing alone, "is insufficient to establish the requisite temporal proximity."[185]

Even if four months did constitute sufficient temporal proximity, intervening factors are at play. Plaintiff's own pleadings admit to such. Indeed, Plaintiff describes the "closure letter" she sent

181. (Doc. 19 at 5 ("Plaintiff would not have been retaliated against if she [had] not made protected complaints to Sul Ross.")).
182. *Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 796 (5th Cir. 2015) (unpublished).
183. *Id.* (citation omitted).
184. *See Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 171 (5th Cir. 2014).
185. *Alva v. Tex. A&M Int'l Univ.*, No. 5:17-CV-144, 2018 WL 5634983, at *8 (S.D. Tex. Oct. 31, 2018).

following her Title IX complaint and prior to the release of the warnings.[186] Plaintiff insists that she

sent her letter after Defendant DeVoll recommended[187] she not contact Professor Ryan following the

conclusion of her hearing. This guidance was purportedly given on July 21, 2020. After Plaintiff sent

her letter, Plaintiff contends that DeVoll in an October 27, 2020, email "misstated guidance to not

talk to [Professor Ryan] as a violation of a 'recommendation.'"[188] It is unclear how any admonition

by DeVoll to refrain from communicating with Professor Ryan *before* Plaintiff sent her closure letter

would be a "consequence" of participating in her Title IX complaint. Equally obfuscated is how

Defendant DeVoll's post-letter email would demonstrate that Sul Ross, in issuing the warning

trifecta, was doing so only as a result of Plaintiff filing her complaint instead of her sending the

closure letter. With regards to the alleged acts of retaliation, Plaintiff makes no distinction between

Sul Ross and Board of Regents. Therefore, the same conclusion as above should be adopted: Plaintiff

has not sufficiently alleged that the filing of the Title IX complaint with Sul Ross against Professor

Ryan was the but-for cause of the warnings.

     To the extent, however, that Plaintiff is claiming her October 2020 "closure letter"

constituted participation in her Title IX complaint or investigation,[189] the undersigned finds this

connection deficient as well. Plaintiff admits that the Title IX complaint and investigation was

instigated on July 16, 2020, and resulted in an issuance of a notice of final outcomes on July 21,

2020. Plaintiff does not allege facts indicating that the Title IX investigation continued beyond that

point. Nor does she assert that a "notice of final outcomes" means something other than the

---

186. (Doc. 19 at 2–3).
187. Defendants do present a tangential challenge in their Reply to the element of adverse action concerning DeVoll's email. (Doc. 23 at 5). It does not appear however that Plaintiff is asserting DeVoll's email is adverse action. Instead, Plaintiff's allegation in her Response is more aptly interpreted as demonstrating retaliatory conspiracy, a claim not asserted in the First Amended Petition. (Doc. 22 at 3). It therefore cannot be considered.
188. (Doc. 22 at 3).
189. Defendants contend in their Reply that sending the closure letter "cannot constitute protected Title IX activity." (Doc. 23 at 5). To the extent Plaintiff claims that the letter was a "protected activity," Plaintiff provides no authority indicating that sending an email to an accused harasser after an investigation has concluded is protected. The undersigned does not detect any authority on this matter. Therefore, Plaintiff has not met her burden of showing that sending the "closure letter" was a protected activity under Title IX.

conclusion of her investigation, or that the closure letter was an attempt at initiating another investigation.[190] Plaintiff does not claim she was otherwise required or instructed to contact Professor Ryan in October 2020. Thus, Plaintiff has not alleged facts sufficient to establish causation. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's Title IX retaliation claim against Sul Ross.

### 4.    Title IX Discrimination

Defendants also argue that Plaintiff's claim involving Board of Regents does not assert a retaliation claim but instead "attempts to plead a Title IX discrimination claim."[191] Plaintiff counters by noting that all Defendants acted with "deliberate conscious actions," apparently confirming that she is pursuing a discrimination claim.[192] She asserts that the supposedly retaliatory policies at Sul Ross "have institutionalized a system by which female victims of sexual exploitation and harassment are not provided equal educational opportunities on campus." According to Plaintiff, the "male perpetrator of sexual exploitation and harassment has been given disproportionate protections in the Title IX investigation and outcome process."[193] These allegations seemingly present a Title IX discrimination claim.

Federal courts recognize four theories for gender bias discrimination under Title IX: "(1) erroneous outcome"; "(2) selective enforcement"; "(3) deliberate indifference"; "and (4) archaic assumptions."[194] Plaintiff ostensibly presents only a deliberate indifference claim in her First Amended Petition and Response. For a deliberate indifference claim, a plaintiff must assert that an

---

190. Defendants also point out that the "letter was sent to a private business email address, not [Sul Ross] or one of its officials." (Doc. 20 at 16). This argument, however, is noticeably devoid of any explanation as to why it having been sent to a private email address would sequester it from the realm of participation in a Title IX complaint or investigation. Plaintiff unfortunately does not respond to this argument. The undersigned does not find a lack of causation based on the closure letter's recipient being a private email address.
191. (Doc. 20 at 14).
192. (Doc. 22 at 3).
193. (Doc. 19 at 6).
194. *Doe v. Am. Univ.*, No. 19-cv-03097, 2020 WL 5593909, at *6 (D.D.C. Sept. 18, 2020) (internal quotation marks omitted).

educational institution (1) possessed "actual knowledge" of the discrimination; (2) failed to adequately respond; and (3) acted with "deliberate indifference" in responding to the discrimination.[195]

Defendants dispute whether Board of Regents acted with deliberate indifference, as well as whether Plaintiff was discriminated against to begin with. An educational institution acts with deliberate indifference when it "consciously disregards a known and excessive risk to the victim's health and safety."[196] This is a "high bar, and neither negligence nor mere unreasonableness is enough."[197] Thus, the general admonition is that "courts should refrain from second guessing the disciplinary decisions made by school administrators."[198]

Construing the claim against Board of Regents as a discrimination claim under Title IX, the undersigned finds again that it is deficient. Specifically, Plaintiff fails to plead discrimination in this case. It is undisputed that Sul Ross and Board of Regents resolved Plaintiff's Title IX complaint against Professor Ryan with the finding that he violated the Texas State University System Sexual Misconduct Policy. Given that there are no allegations that Professor Ryan was disciplined beyond or less than whatever consequence would result from a finding that he violated the Sexual Misconduct Policy in a case concerning a male student, there exists no pleaded reason to second-guess Sul Ross's disciplinary decision. Plaintiff does not, for example, allege that the response by Sul Ross made her vulnerable to "future instances of harassment" by Professor Ryan.[199] Nor does Plaintiff claim that Professor Ryan received no discipline. She merely and baselessly asserts that Professor Ryan "was given disproportionate protections" by the discriminatory policies in place at Sul Ross.[200] From

---

195. *Doe v. Edgewood Ind. Sch. Dist.*, 964 F.3d 351, 358–59 (5th Cir. 2020).
196. *Hernandez v. Tex. Dep't of Protective & Regul. Servs.*, 380 F.3d 872, 880 (5th Cir. 2004).
197. *Id.*; *Doe ex rel. Doe v. Dallas Ind. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000) (citation omitted).
198. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).
199. *See, e.g.*, *Aguiluz v. Univ. of Tex. Health Sci. Ctr.*, No. 5-19-CV-01356-FB-RBF, 2021 WL 148057, at *6 (W.D. Tex. Jan. 15, 2021).
200. (Doc. 19 at 6).

Plaintiff's own pleaded facts, Sul Ross considered her Title IX complaint and found that Professor

Ryan violated the Sexual Misconduct Policy. A factually deficient recounting, no other students or

instances of this being a practice or policy are mentioned, and there are no assertions that the

allegedly unfair investigation was masquerading as legitimate discipline.[201] Thus, it is difficult to

infer how Professor Ryan would have been provided protections influenced by Plaintiff's gender.

    If the warnings released against Plaintiff and her coincident alleged suspension or dismissal

are to exemplify the "protections" Professor Ryan received, it strains the imagination to think, based

on Plaintiff's allegations alone, how these would be "disproportionate." "Disproportionate" implies

an imbalance between one concept and another, here between Plaintiff's and Professor Ryan's

"protections."[202] As noted, Plaintiff does not allege that Professor Ryan was not himself suspended,

dismissed, or warned in a similar manner. Thus, there is no comparator for proportionality. With no

other data points upon which proportionality can be assessed, even hypothetically, the undersigned

does not detect any indifference from the pleadings. As Defendants duly note, Sul Ross and Board of

Regents cannot be said to have been deliberately indifferent to discrimination if discrimination has

not been pleaded. Plaintiff's Title IX discrimination claim, if present, is inherently insufficient.

    Even if Plaintiff had pleaded discrimination, she has failed to allege facts signifying

deliberate indifference to said discrimination on behalf of Sul Ross and Board of Regents. Plaintiff's

pleadings emanate confusion as to which part of her pleading Defendants dispute constitutes

deliberate indifference. As both parties agree, the Title IX complaint was resolved against Professor

Ryan. Defendants contend that this evinces the fact that the complaint's resolution favored Plaintiff,

thereby precluding any deliberate indifference. Plaintiff, on the other hand, avers that Defendant

DeVoll's email to Plaintiff informing her that she violated a university directive by sending the

---

201. *See Lozano v. Baylor Univ.*, 408 F. Supp. 3d 861, 890–91 (W.D. Tex. 2019) (holding sufficient allegations that policy was in place involving multiple victims and preemptive warnings to suspected abusers).
202. *Disproportionate*, Black's Law Dictionary (11th ed. 2019).

"closure letter" to Professor Ryan indicates that Sul Ross acted with "direct action" and not deliberate indifference.[203] Plaintiff's reading of Defendants' argument is incorrect. Defendants are not substantially disputing that Sul Ross intended to advise Plaintiff to not contact Professor Ryan. Likewise, they do not argue that Sul Ross did not inform her of a potential violation of its directives. Rather, their Motion to Dismiss and Reply make clear that Defendants are challenging the supposed existence of deliberate indifference where Sul Ross and Board of Regents' policies "allowed for the quick resolution of Plaintiff's Title IX complaint[] in her favor."[204] Plaintiff does not address how DeVoll's email stating that Plaintiff's closure letter "violate[d] a directive" by the university constitutes deliberate indifference to address any sexual harassment against Plaintiff by Professor Ryan.[205] There is no dispute here that Sul Ross advised Plaintiff to refrain from contacting Professor Ryan, deliberately, directly, or otherwise.

Further, Plaintiff's First Amended Petition asserts that Sul Ross "diverted" and "undermined" her Title IX complaint, without any explanation as to how this happened.[206] DeVoll's email is not mentioned anywhere this section of the petition, and no connection is drawn between said email and any supposed diversion or undermining of her complaint. By Plaintiff's own timeline, DeVoll sent the email in October 2020, several months after Sul Ross reached a final outcome in its Title IX investigation against Professor Ryan. Plaintiff's petition lacks allegations linking DeVoll's email to any indifference in the Title IX investigation. Thus, if Plaintiff believes that a Sul Ross recommendation to not contact Professor Ryan was deliberate indifference, her pleadings inadequately explain how this might be. Plaintiff has not sufficiently alleged deliberate indifference.

Putting aside this questionable logic, the undersigned observes it difficult to complain of disproportionate responses to Title IX complaints when the complainant-plaintiff achieved a finding

---

203. (Doc. 22 at 2–3).
204. (Doc. 20 at 14).
205. (Doc. 22 at 3).
206. (Doc. 19 at 5–6).

presumably in her favor. If Sul Ross found that Professor Ryan violated the Sexual Misconduct

Policy, Plaintiff would have to allege facts indicating Sul Ross did not discipline Professor Ryan

beyond a given extent because of Plaintiff's gender, that Professor Ryan would have been disciplined

more severely if the complainant were male, or some other discriminatory circumstance. Plaintiff

does not assert these, or that Professor Ryan's harassment continued beyond the date she filed her

Title IX complaint. While the Title IX report and investigation may have made Defendants aware of

the harassment and assault Plaintiff suffered, it is not alleged that Defendants continued to allow

Professor Ryan to engage in those acts. Thus, it is unclear how Defendants could have consciously

disregarded or were otherwise deliberately indifferent to a risk not alleged to have been ongoing.[207]

 If Plaintiff's First Amended Petition is construed as asserting a Title IX discrimination claim,

it is also deficient for want of allegations illustrating either Sul Ross or Board of Regents acted with

deliberate indifference. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss

be **GRANTED** as to any Title IX discrimination claim asserted against Sul Ross and Board of

Regents.

### C. Section 1983 First Amendment Retaliation Claim

 Plaintiff presents a § 1983 claim for First Amendment retaliation against Defendants Gallego,

DeVoll, and Snyder.[208] Specifically, Plaintiff argues that Defendants retaliated against her for her

exercise of free speech, that being the email she sent to Professor Ryan as part of her "closure."

 The First Amendment of the United States Constitution, applicable to the States through the

Fourteenth Amendment, provides that "Congress shall make no law . . . abridging the freedom of

speech."[209] The First Amendment "prohibits not only direct limits on individual speech but also

---

207. *See Estate of Brown v. Ogletree*, No. 11-cv-1491, 2012 WL 591190, at *9 (S.D. Tex. Feb. 21, 2012) (finding deliberate indifference alleged where plaintiff alleged defendant "continually ignored the harassment" and that "school officials rebuffed attempts" to stop the conduct).
208. (Doc. 19 at 1, 6).
209. U.S. Const. amend. I.

adverse governmental action against an individual in retaliation for the exercise of protected speech activities."[210]

Section 1983 allows for recovery against "[e]very person who . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."[211] To establish a § 1983 claim for retaliation for the exercise of free speech in the plaintiff-student context, a plaintiff must allege she was (1) "engaged in constitutionally protected activity"; "(2) the defendants' actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; "and (3) the defendants' adverse actions were substantially motivated against the plaintiff['s] exercise of constitutionally protected conduct."[212]

This framework[213] is employed against the backdrop of several constitutional considerations. First, "[s]tudents do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'"[214] Second, and conversely, students' First Amendment rights in school "are not automatically coextensive with the rights of adults in other settings."[215] Notwithstanding this, "school officials may only restrict . . . private, personal expression to the extent it would 'materially and

---

210. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).
211. 42 U.S.C. § 1983.
212. *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 351 (5th Cir. 2017) (citing *Keenan*, 290 F.3d at 258) (quotation marks omitted); *see also Ford v. Reynolds*, 167 F. App'x 248, 250 (2d Cir. 2006) (unpublished).
213. For speech made by a public employee "to enjoy constitutional protection from retaliation by a public employer, the speech must involve a matter of public concern." *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 221 (5th Cir. 1999). Typically, this First Amendment test applies only to public employees, not students. *See id.* However, some federal courts in the Fifth Circuit have utilized this framework to address motions to dismiss complaints brought by students. *See, e.g., Scherff v. S. Tex. Coll.*, No. 7:18-CV-658, 2017 WL 3783042, at *9 (S.D. Tex. Aug. 29, 2017), *abrogated on other grounds*, *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291 (5th Cir. 2021) (applying "public concern" requirement to case brought by student-plaintiff). Neither party argues for application of the public concern test here. Therefore, the traditional balancing test outlined in *Brinsdon* and *Tinker* will be utilized. *See Davis v. Angelina Coll. Bd. of Trs.*, No. 9:17-CV-00179, 2018 WL 10111001, at *5–8 (E.D. Tex. June 1, 2018).
214. *Oliver v. Arnold*, 3 F.4th 152, 159 (5th Cir. 2021) (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)).
215. *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 682 (1986).

substantially interfere with the requirements of appropriate discipline in the operation of the school,'
or 'impinge upon the rights of other students.'"[216]

Defendants only challenge the second element, that of causation—in particular, the allegation
that they were personally involved in or caused Plaintiff's purported dismissal. Plaintiff does not
address this in her Response. In any § 1983 case, a given defendant sued in his individual capacity
must be alleged to have had "personal involvement in the violative conduct."[217] Defendants in § 1983
cases must thus either be personally involved or "commit acts [that] are causally connected to the
constitutional violation alleged."[218] Respondeat superior liability is not available under § 1983, so
defendants must have committed acts directly contributing to the retaliation.[219] Specific conduct by
the defendants must be alleged, as conclusory allegations of involvement are insufficient.[220]

Plaintiff asserts that "Defendants inserted themselves the speech [*sic*] by retaliating against
[Plaintiff] for the exercise of her speech." The "speech" to which Plaintiff refers is the "closure
letter," an email from Plaintiff to Professor Ryan on October 25, 2020. That this email was sent by
Plaintiff to Professor Ryan's email is undisputed. Plaintiff purportedly sent this email as part of
"closure," resulting from professional counseling Plaintiff allegedly sought "[d]ue to the trauma
stemming from the sexual exploitation, sexual harassment, manipulation, and deceit" from Professor
Ryan. According to Plaintiff, Defendants Gallego, DeVoll, and Snyder "all participated in an attempt
to silence" her for exercising her constitutional right, and all three acted "willfully, deliberately[,] and
maliciously [or] with reckless disregard" to Plaintiff's right to free speech. DeVoll and Snyder
specifically "participated in making an official statement" by way of the warnings.[221] Thus, Plaintiff

---

216. *Morgan v. Swanson*, 659 F.3d 359, 375 (5th Cir. 2011) (quoting *Tinker*, 393 U.S. at 509).
217. *See McIntyre v. Castro*, No. 1:16-CV-490 RP, 2017 WL 1483572, at *3 (W.D. Tex. Apr. 25, 2017) (citing *McIntyre v. Castro*, 670 F. App'x 250, 251 (5th Cir. 2016) (unpublished)).
218. *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022) (quotation marks omitted) (alteration in original).
219. *Id.* at 251.
220. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).
221. (Doc. 19 at 3, 6).

asserts the First Amendment retaliation claim under the theory of personal involvement on behalf of Gallego, DeVoll, and Snyder.

In this case, the undersigned finds that Plaintiff has not sufficiently pleaded a First Amendment retaliation claim against Defendants Gallego, DeVoll, and Snyder. Plaintiff's allegations can be reduced to the following: Plaintiff sent an email to Professor Ryan; in response, DeVoll and Snyder "participated" in the issuance of warnings trespassing her from Sul Ross. These allegations are patently inadequate. While Plaintiff need not plead with perfect precision the contents of each of Defendants' actions, certainly Plaintiff should have given at least a general description of DeVoll and Snyder's roles in the release of the warnings. Assuming *arguendo* that the warnings would constitute some form of retaliation, a proposition the merits of which the undersigned has questioned above, Plaintiff has only stated in conclusory fashion that DeVoll and Snyder were involved. Further, Defendant Gallego is absent from this purported calculated act. There are no allegations accompanying factual statements other than a recapitulation of the elements to support the conclusion that any of Gallego, DeVoll, or Snyder were involved in the issuance of the warnings.[222] Even the most creative of minds could not infer facts about any of these Defendants' involvement. Plaintiff's First Amendment retaliation claim cannot stand.

Plaintiff appears to assert a new factual allegation implicating Gallego in her Response.[223] Specifically, she claims "Gallego and others acted in concert to circle the wagons and protect one of their own."[224] In order to support this, Plaintiff affixes an exhibit featuring a July 2020 email undisputedly from DeVoll. Neither this allegation nor anything like it appears in the First Amended

---

222. *See Wren v. Midwestern State Univ.*, No. 7:18-cv-00060-O-BP, 2019 WL 3099408, at *13 (N.D. Tex. June 26, 2019).

223. Additionally, the Response portends to present a new theory of liability for Defendants DeVoll, Gallego, and Snyder. Specifically, Plaintiff claims they "acted in concert to create a justification of a threat that did not exist to allow for the sanctioning of Plaintiff." (Doc. 22 at 4). It is not apparent how this supposed retroactive impetus fabrication would support any element of her First Amendment retaliation claim. Plaintiff does not tie this allegation to any other claim. With no clear relevance of this assertion, it should be disregarded.

224. (Doc. 22 at 3).

Petition. Assertion of a factual allegation for the first time in a responsive brief is improper to rebut a motion to dismiss.[225] Therefore, the undersigned cannot consider it in evaluating the merits of the Motion to Dismiss.

Even if this fact about Gallego were properly pleaded, however, it would still not be enough. DeVoll's email on its face states that it "provides notice that any contact [between Plaintiff and Professor Ryan] violates the directive given by a [Sul Ross] [o]fficial."[226] The directive that the email references is the Notice of Final Outcomes issued at the conclusion of Plaintiff's Title IX complaint against Professor Ryan, prior to the commencement of the instant suit.[227] Plaintiff, however, does not explain how DeVoll's email demonstrates that "Gallego and others acted in concert" to protect Kara.[228] Presumably, Plaintiff leaves it up to the Court to furnish the connection between DeVoll's email and a wagon-circling concert. This is not the Court's duty. The email at best indicates that DeVoll considered Plaintiff's closure letter to have run afoul of the no-contact recommendation in the Notice of Final Outcomes. It is not evident how this implicates either Gallego or Snyder. Plaintiff's Response exhibits, therefore, even if properly pleaded, are insufficient to cure the deficiencies in her allegations as outlined above.

Plaintiff has failed to plead sufficient facts from which the undersigned could draw the conclusion that any combination of Gallego, DeVoll, and Snyder had any role in the genesis of the warning trifecta. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's First Amendment retaliation claim against Gallego, DeVoll, and Snyder.

### D.    Section 1983 "Monell Liability" Claim

---

225. *Bennett v. JPMorgan Chase*, No. 3:12-CV-212-N, 2013 WL 655059, at *5 n.4 (N.D. Tex. Feb. 5, 2013).
226. (Doc. 22-1 at 1).
227. (Doc. 22-2).
228. (Doc. 22 at 3).

Plaintiff presents a § 1983 *Monell* liability claim against only Defendant Sul Ross.[229] Defendants argue that *Monell* liability cannot be sought against Sul Ross, as such claims can only be brought against municipalities, which Sul Ross is not.[230]

*Monell* liability spurs from the eponymous United States Supreme Court case *Monell v. Dep't of Social Services of City of New York*.[231] As noted above, § 1983 permits civil lawsuits against "persons" who deprive individuals within the United States of rights, privileges, or immunities "secured by the Constitution and laws."[232] Prior to *Monell*, lawsuits under § 1983 and brought against cities and other local governments were barred "because such entities were not [considered] 'persons' within the meaning of the statute."[233] In *Monell*, the Court found that

> Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies. . . . [T]herefore, [local governing bodies] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where [] the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.[234]

Perhaps most evidently, Sul Ross is a university, and not a municipality.[235] The question then becomes one of whether Sul Ross constitutes a "local government unit" to which *Monell* may have extended § 1983 liability. State-funded and -operated universities have often been considered to be "arms of the state," which fall outside of *Monell*'s "local government unit" scope.[236] Other times, the Fifth Circuit has been keener to apply *Monell* to state universities as "institution[s] of higher learning."[237]

---

229. (Doc. 19 at 2, 7).
230. (Doc. 20 at 18).
231. 436 U.S. 658 (1978).
232. 42 U.S.C. § 1983.
233. *Gay Student Servs. v. Tex. A & M Univ.*, 612 F.2d 160, 163 (5th Cir. 1980) (citing *City of Kenosha v. Bruno*, 412 U.S. 507 (1973)).
234. *Monell*, 436 U.S. at 690 (emphasis in original).
235. Tex. Educ. Code § 96.01.
236. *Hedrick v. W. Mich. Univ.*, No. 1:22-cv-308, 2022 WL 10301990, at *12 (W.D. Mich. Oct. 17, 2022).
237. *See Gay Student Servs.*, 612 F.3d at 163–64.

The undersigned concludes that *Monell* liability is unsupported as against Sul Ross. *Monell* expressly cabined itself to "local government units which are *not* considered part of the State for Eleventh Amendment purposes."[238] Buttressing the doctrine of sovereign immunity, the Eleventh Amendment insulates States and their agencies from liability except where it consents or Congress provides for such suit.[239]

In this case, Plaintiff does not contest that Sul Ross is a state agency, and does not argue that Sul Ross or Texas itself have consented to liability against Sul Ross.[240] Congress has not expressly abrogated the Eleventh Amendment immunity for § 1983 claims, and Texas apparently has not consented to this type of lawsuit.[241] Neither States themselves, nor their agents, are § 1983 persons.[242] The Fifth Circuit's holding to the contrary in *Gay Student Services* and its progeny have since been definitively abrogated.[243] With no waiver of immunity or congressional permission, Sul Ross cannot be sued under § 1983.[244]

Plaintiff has not met her burden of illustrating this Court's subject matter jurisdiction over Sul Ross for her *Monell* claim. The undersigned therefore concludes that the § 1983 *Monell* cause of action against Sul Ross must be dismissed under Federal Rule 12(b)(1). Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's § 1983 *Monell* liability claim against Defendant Sul Ross.

---

238. *Monell*, 436 U.S. at 690 n.54 (emphasis added).

239. U.S. Const. amend. XI; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *Lewis v. Univ. of Tex. Med. Branch*, 665 F.3d 625, 630 (5th Cir. 2011) (finding non-consenting state university to be a "state agency" immune from § 1983 suit).

240. (*See generally* Docs. 19, 22; *see also* Doc. 23 at 7).

241. *See Alcantara v. Univ. of Hous.*, No. H-14-0463, 2016 WL 4040123, at *2 (S.D. Tex. July 28, 2016).

242. *Hart v. Univ. of Tex.*, 474 F. Supp. 465, 467 (S.D. Tex. 1979); *Avena v. Tex. Dep't of Hum. Servs.*, No. SA-05-CA-653-XR, 2006 WL 2734325, at *8 (W.D. Tex. Sept. 22, 2006); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[W]e reaffirm [] what we had concluded prior to *Monell* . . . that a State is not a person within the meaning of § 1983.").

243. *Will*, 491 U.S. at 61 n.3, 61–64 (expressly resolving the conflict between *Gay Student Services* and courts finding that states are not persons under § 1983).

244. *See McWhinney v. Prairie View A&M Univ.*, No. H-05-3927, 2006 WL 2253456, at *2 (S.D. Tex. Aug. 7, 2006).

**E.      Defamation Claim**

Plaintiff also asserts a claim for defamation against Defendants Sul Ross, DeVoll, Snyder, and Kara. It is unclear which statute she brings it under. However, in apparent chronological order, Plaintiff lists each cause of action and the purported provisions on which they rely.[245] The preceding cause of action, Plaintiff's § 1983 claim for *Monell* liability, gives the only possible insight. Thus, in the interest of thoroughness, the undersigned will construe Plaintiff's defamation claim as asserted under state law and federal constitutional law.

Defendants challenge the viability of the defamation claim based on sovereign immunity, the statute of limitations, and state law's mandate to dismiss employees when the governmental entity is sued. Defendants also seek dismissal of the defamation claim for its facial insufficiency.[246]

**1.      Sovereign Immunity**

At the outset, the undersigned concludes that Defendant Sul Ross, as a state agency, is immune from liability for defamation. As explained above, federal § 1983 claims can only be maintained against a sovereign state or its agents where the state consents to suit or Congress provides for such litigation.[247] Sul Ross is undisputedly a state agency against which Congress has evidently provided no § 1983 relief. Under § 1983, therefore, unless Texas has consented or else waived its immunity, Plaintiff cannot as a matter of law maintain her defamation lawsuit against it or its entities.

Defendants claim that the Texas Tort Claims Act ("TTCA") "provides only a narrow waiver of immunity that does not include intentional torts such as defamation."[248] Defendants' reading is correct. The TTCA waives sovereign immunity in "three general areas: use of publicly owned

---

245. (Doc. 19 at 1, 2, 7).
246. (Doc. 20 at 18–19).
247. *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015).
248. (Doc. 20 at 19).

vehicles, premises defects, and injuries arising from conditions or use of property."[249] The TTCA does not waive intentional torts, which a category of torts including defamation.[250] Plaintiff does not argue that Sul Ross has waived its immunity. Therefore, she has not met her burden of demonstrating this Court possesses subject matter jurisdiction over the Sul Ross defamation claim. Plaintiff as a result cannot maintain her defamation cause of action against Sul Ross, and it must be dismissed under Federal Rule 12(b)(1). Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to the defamation claim against Sul Ross.

### 2.  Statute of Limitations

Even if sovereign immunity did not apply, the undersigned concludes that the statute of limitations bars this claim. Defendants assert that the entirety of Plaintiff's claim is barred by the applicable statute of limitations.[251] Texas state law provides for a one-year statute of limitations for defamation claims.[252] Ordinarily, the statute begins to run when the defamatory statement is published.[253] However, the discovery rule applies to such actions, under which the statute of limitations "does not begin to run until the injured party learns of, or, in the exercise of reasonable diligence, should have learned of the injury or wrong giving rise to the action."[254]

Although Plaintiff does not plead the discovery rule here or respond to Defendants' arguments, in the interest of thoroughness, these arguments will be addressed.[255] The warnings were issued on November 10, 2020. Plaintiff filed her Original Petition in state court, which was eventually removed to this Court, on January 20, 2022.[256] Thus, without the discovery rule, Plaintiff

---

249. *Leatherwood v. Prairie View A & M Univ.*, No. 01-02-1334-CV, 2004 WL 253275, at *2 (Tex. App.—Houston [1st Dist.] Feb. 12, 2004) (mem. op.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.021).
250. *Thomas v. City of Hous.*, No. H-11-3564, 2012 WL 4103932, at *2 (S.D. Tex. Sept. 17, 2012); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.057.
251. (Doc. 20 at 18).
252. Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a); *Schirle v. Sokuda USA, L.L.C.*, 484 F. App'x 893, 900 (5th Cir. 2012) (unpublished).
253. *Schirle*, 484 F. App'x at 900; *Langston v. Eagle Pub. Co.*, 719 S.W.2d 612, 615 (Tex. App.—Waco 1986).
254. *Johnson v. Baylor Univ.*, 188 S.W.3d 296, 301 (Tex. App.—Waco 2006).
255. (Docs. 19, 22).
256. (Doc. 1-6 at 1).

would have needed to file her claim by November 10, 2021, for this claim to have been timely. If the discovery rule is applied, in order for this case to be timely, she would have needed to allege that she in exercising reasonable diligence would only have received notice of the pleadings by January 20, 2021. Plaintiff neither filed this claim by November 2021 nor pleaded that she received the warnings on or after January 20, 2021.[257] Therefore, the statute of limitations has expired on Plaintiff's defamation claim. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's defamation claim against all relevant Defendants.

### 3.       Texas Tort Claims Act

In the event sovereign immunity and the statute of limitations do not bar this claim, the undersigned turns to Defendants' argument that the Individual Defendants should be dismissed from the defamation claim due to the TTCA's election of remedies provision. In particular, Defendants insist that the provision permits dismissal of the agency's employees where a plaintiff sues "both a governmental entity and its employees for the same tort."[258] Thus, Defendants are moving to dismiss this claim against Individual Defendants under the relevant section of the TTCA.

Section 101.106(e), the TTCA's election of remedies provision, necessitates that a governmental unit's employees "shall immediately be dismissed on the filing of a motion by the governmental unit."[259] As stated by the Texas Supreme Court,

> [t]he revision's apparent purpose was to force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery.[260]

---

257. (*See generally* Doc. 19).
258. (Doc. 20 at 19).
259. Tex. Civ. Prac. & Rem. Code § 101.106(e). Application of the TTCA in the context of the defamation claim does not mandate dismissal over Plaintiff's claims asserted under § 1983. *See Golden v. Austin Cnty. Sheriff's Dep't*, No. H-09-817, 2009 WL 1835448, at *4–5 (S.D. Tex. June 26, 2009).
260. *Mission Consol. Ind. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (2008).

Nevertheless, § 101.106(e) does not confer an "absolute right to dismissal upon the motion's filing."[261] Thus, a state entity must file a motion to dismiss pursuant to § 101.106(e) to trigger the dismissal mandate.[262] The primary principle behind TTCA claim evaluations is that "all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under the [TTCA]' for purposes of [§] 101.106."[263]

In this case, Plaintiff's defamation claim against Individual Defendants DeVoll, Snyder, and Kara, must be dismissed. Each of these individuals is alleged by Plaintiff to be employed by Sul Ross in some capacity. The First Amended Petition is rather ambiguous as to whether it asserts claims against Individual Defendants in their individual capacities or instead their official capacities. In the "Defamation" section, however, Plaintiff indicates that the alleged defamatory statement was made by Defendant Kara "and other employees during the course and scope of their employment."[264] Defendants' Motion to Dismiss confirms that the Individual Defendants "are state employees acting within the scope of their employment."[265] Plaintiff does not respond to Defendants' § 101.106(e) arguments on this point. Therefore, for the purposes of this section, the undersigned will construe Plaintiff's defamation claim as being asserted against all Individual Defendants only in their official capacities.[266]

Plaintiff cannot maintain suit here against the Individual Defendants for defamation. Defamation is an intentional tort. The Individual Defendants were allegedly employees of Sul Ross, the governmental entity, at all relevant times. Because Sul Ross, as the governmental entity, moves to dismiss this claim against Individual Defendants pursuant to § 101.106(e) of the TTCA, the TTCA mandates that this Court do so. Plaintiff has not provided any reason to circumvent this application of

261. *Tex. Dep't of Aging & Disab. Servs. v. Cannon*, 453 S.W.3d 411, 418 (Tex. 2015).
262. *See Univ. of Tex. Health Sci. Ctr. v. Rios*, 542 S.W.3d 530, 537–38 (Tex. 2017).
263. *Id.* (quoting *Garcia*, 253 S.W.3d at 659).
264. (Doc. 19 at 2, 7).
265. (Doc. 20 at 19).
266. *See Ramsey v. Stephenson*, No. C-09-170, 2010 WL 173612, at *4 (S.D. Tex. Jan. 13, 2010).

the TTCA. Therefore, the defamation claim against the Individual Defendants must be dismissed. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's defamation claim against Individual Defendants.[267]

### 4.      Prima Facie Defamation Claim

Were the defamation claim not barred by sovereign immunity or the statute of limitations, and § 101.106 did not require dismissal of the Individual Defendants, the undersigned considers the merits of the surviving defamation claim. Defendants argue that Plaintiff has failed to identify "any allegedly false or defamatory statements" or describe how the warning trifecta "could constitute a false or defamatory statement."[268]

### i.      State Law Defamation

Under Texas state law, a private individual must allege facts supporting the following elements to successfully plead a prima facie defamation claim: "(1) publication of a false statement of fact to a third party"; "(2) that was defamatory concerning the plaintiff"; "(3) while acting with negligence regarding the truth of the statement."[269] Publication signifies a communication to at least one other person.[270]

The undersigned concludes that the First Amended Petition lacks sufficient allegations to sustain a prima facie defamation claim. The extent of Plaintiff's pleadings is as follows: Sul Ross,

---

267. The undersigned's conclusion that the defamation claim against Individual Defendants should be dismissed because Sul Ross, the governmental entity, is also a Defendant does not change given the preceding conclusion that Plaintiff cannot maintain suit for defamation against Sul Ross for other reasons. Sul Ross has not indicated an intent to waive immunity here, and Plaintiff does not argue otherwise. (*See* Docs. 19, 20); *see also Tex. Adjutant General's Off. v. Ngakoue*, 408 S.W.3d 350, 359 (Tex. 2013) ("[S]ubsection (e) does not provide for dismissal of the governmental unit, so when the employee is dismissed under that provision, the suit then proceeds solely against the government, assuming immunity is otherwise waived."). Both claims should be dismissed.
268. (Doc. 20 at 19).
269. *O'Neal v. Alamo Cmty. Coll. Dist.*, No. SA-08-CA-1031-XR, 2010 WL 376602, at *14 (W.D. Tex. Jan. 27, 2010) (citing *WFAA TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)); *D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 439 (Tex. 2017) (citing *In re Lipsky*, 460 S.W.3d 579, 593 (2015)); *Butowsky v. Folkenflik*, No. 4:18CV442, 2019 WL 2518833, at *11 (E.D. Tex. Apr. 17, 2019) (citing *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018)).
270. *See Indus. Found. v. Tex. Indus. Accident Bd.*, 540 S.W.2d 668, 683 (Tex. 1976).

DeVoll, Kara, and Snyder defamed Plaintiff by "making an official statement" in the form of trespass and harassment warnings. Yet, Plaintiff does not plead that this "statement" was communicated to a third party. In particular, Kara allegedly commissioned the statement. DeVoll and Snyder allegedly participated in its release. Sul Ross is the institution which purportedly issued the statement. Finally, an unserved campus police officer delivered the warnings to Plaintiff.[271] While this defamation cartel certainly sounds menacing, Plaintiff's pleadings are notably devoid of any facts claiming the warnings were released to anybody other than those entities, a police officer who delivered the statement, and herself. Looking at the warnings themselves, each appears to have been signed by the "person warned," which in this case, is Plaintiff.[272] Plaintiff does not allege that this statement was publicly released to uninvolved third parties, whether by newspaper, the Internet, bulletin, or otherwise. Therefore, Plaintiff's defamation claim fails on this ground alone.

Even if the "statements" were publicly released, Plaintiff additionally has not alleged that the "statements" were false. Plaintiff does in a conclusory fashion contend that the "statement" was "defamatory and false."[273] Plaintiff does not indicate any "fact" or part of the warnings which may be false or untrue. Explaining how the warnings were "defamatory and false" approaches all that is necessary for a complaint to survive a motion to dismiss at this stage.[274] But Plaintiff's complaint nevertheless falls short of meeting this threshold. Further, a brief examination of the warnings again reveals no facts, whether false or not, conceivably relating to any email exchange between Plaintiff and Professor Ryan.[275] Unless Plaintiff is claiming—and it does not appear she is—that she is of a different race, sex, or age than what is described on the warnings, it is not clear what on the face of the warnings could be false. Even then, technically incorrect physical descriptions are not nearly the

271. (Doc. 19 at 2, 3).
272. (Docs. 20-2 at 2, 20-3 at 2).
273. (Doc. 19 at 7).
274. (Doc. 19 at 7); *see Walker v. U.S. Bank*, No. 3:21-cv-758-L, 2022 WL 3720138, at *3 (N.D. Tex. July 28, 2022).
275. (*See* Docs. 20-2, 20-3).

calumny one might expect in a defamation case. Plaintiff's defamation claim fails on this second ground as well.

Much like with the prior two elements, Plaintiff's First Amended Petition lacks the allegations of the crucial facts necessary to support a negligent publication. Plaintiff argues that those who made the statement did so "with actual malice or in reckless disregard for the truth."[276] Again, Plaintiff does not properly indicate which facts from the statements she believes are false. If there are no false statements in the warnings, it strains credulity to believe that any of Defendants could have been malicious or reckless in making nonexistent false statements. As an aside, Plaintiff has mistakenly utilized the mens rea requirement for a defamatory statement made against a public official, which she does not claim to be.[277] Were the arguably lower standard of mere negligence applicable here, the undersigned's conclusion that Plaintiff fails to point to any purportedly false facts from the warning trifecta would remain unchanged. Therefore, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's defamation claim under state law.

### ii. Federal Constitutional Defamation

It would appear that Plaintiff asserts the defamation claim under state law.[278] If instead Plaintiff's defamation claim is asserted under federal constitutional law pursuant to § 1983, the undersigned's conclusion remains the same. Section 1983 claims for constitutional defamation, if premised upon due process claims, are "based on the notion that [the plaintiff] has suffered stigma to [their] reputation, which has infringed upon [their] protected liberty interests."[279] Government defamation might be actionable where a claimant "shows a stigma *plus* an infringement of some

---

276. (Doc. 19 at 7).
277. *See Cuba v. Pylant*, 814 F.3d 701, 713–14 (5th Cir. 2016).
278. (Doc. 19 at 2 (seeking to have this Court exercise pendent jurisdiction)).
279. *Hux v. Shafer*, No. 3:13-CV-0912-B, 2015 WL 3648570, at *16 (N.D. Tex. June 11, 2015).

other interest."[280] This framework is known as the "stigma plus infringement" analysis.[281] The stigma portion of the analysis concerns the effects of governmental speech about an individual.[282]

     As concluded above, the undersigned does not believe Plaintiff has adequately pleaded an infringement of her due course of law or due process rights, let alone any other constitutional right. Even if she has, the "stigma-plus" theory requires the pleading of a stigma. Plaintiff pleads the "ultimate" stigma that she "will forever be known in the small town of Alpine as the woman who had an affair with the professor and [Sul Ross] banned her for that."[283] This stigma, Plaintiff alleges, was the result of the warnings released by Sul Ross and leading to her dismissal from the university.

     The undersigned has noted above that Plaintiff has failed to allege a stigma attached to her sufficient to constitute a due process violation. Thus, she fails the stigma plus test at the first step to the extent it would be based on her alleged due process violations, and her defamation claim must be dismissed to the extent it is pursued under federal constitutional law.

     Nevertheless, Plaintiff may be able to seek recourse for defamation under § 1983 if she also alleges an additional infringement of "some other interest."[284] Plaintiff must "first identify a protected life, liberty or property interest and then prove that governmental action resulted in deprivation of that interest."[285] In her defamation claim, Plaintiff asserts that the warnings contained false statements.[286] Plaintiff here needs to have alleged she faced a stigma "based on a publicized false charge of sufficient opprobrium" to prevent her from attending Sul Ross or seeking education elsewhere.[287]

---

280. *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991).
281. *Id.*
282. *See Tebo v. Tebo*, 550 F.3d 492, 503 (5th Cir. 2008).
283. (Doc. 19 at 4).
284. *Tebo*, 550 F.3d at 503 (citation omitted).
285. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citation omitted).
286. (Doc. 19 at 7).
287. *Palmer v. City of Monticello*, 31 F.3d 1499, 1503 (10th Cir. 1994).

Plaintiff, as noted above, has not alleged that the warnings were "published" by any governmental unit. Defendants claim the warnings were hand-delivered to Plaintiff.[288] There is no assertion anywhere that the warnings were released to the public or on a bulletin, or that the warnings were placed in a publicly available file.[289] Nor does Plaintiff adequately argue an infringement of any other constitutional interest. Plaintiff furthermore does not allege any facts showing that Sul Ross, through allegedly false statements in the warnings, sought to remove or significantly alter any of Plaintiff's purported constitutional interests.[290] Plaintiff's defamation claim therefore fails to meet either the stigma or the "plus" prongs of the test, and cannot stand under § 1983. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's defamation claim to the extent it is being pursued under federal constitutional law.

## F.     Declaratory Judgment Claim

Plaintiff does not cite a specific statute under which she brings her declaratory judgment claim.[291] However, since this case was removed from state court, it can be inferred that Plaintiff is bringing her declaratory judgment action pursuant to the Texas Uniform Declaratory Judgment Act ("TDJA"). In Texas, the TDJA, codified in Chapter 37 of the Texas Civil Practice and Remedies Code, "affords Texas courts the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."[292] The TDJA is construed liberally; however, Texas courts still "limit [its] application to cases in which there is an actual case or controversy between the parties."[293] Thus, declaratory judgment actions "are intended to determine the rights of parties when a

---

288. (Docs. 20 at 8; 20-3).
289. *See Cannon v. City of W. Palm Beach*, 250 F.3d 1299 (11th Cir. 2001).
290. *See Dean v. City of New Orleans*, No. 11-2209, 2012 WL 2564954, at *12 (E.D. La. July 2, 2012) (finding baseless allegations that plaintiff's employer released false information to entities which thereafter issued trespass warning).
291. (*See generally* Doc. 19).
292. *Boy Scouts of Am. v. Hartford Accident & Indem. Co.*, 443 F. Supp. 3d 753, 760 (N.D. Tex. 2020) (citing Tex. Civ. Prac. & Rem. Code § 37.003)).
293. *Prime Income Asset Mgmt. Co., Inc. v. Waters Edge Living LLC*, No. 3:07-CV-0102-D, 2007 WL 2229050, at *5 (N.D. Tex. Aug. 3, 2007).

controversy has arisen, before any wrong has actually been committed, and are preventative in nature."[294] The TDJA does not afford relief where there is no case or controversy.[295]

The undersigned concludes that declaratory judgment unavailable in this case. As the undersigned has concluded above, Plaintiff does not adequately plead any of the following causes of action against any Defendant: § 19 due course of law; Title IX retaliation; Title IX discrimination; First Amendment retaliation under § 1983; *Monell* liability under § 1983; or defamation under state or federal law. Because the First Amended Petition does not contain sufficient facts supporting any of those claims upon which could be granted, this lawsuit contains no case or controversy. Accordingly, the undersigned **RECOMMENDS** that the Motion to Dismiss be **GRANTED** as to Plaintiff's declaratory judgment claim.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMMENDS** that Defendants' Motion to Dismiss be **GRANTED**.[296]

Specifically, the undersigned **RECOMMENDS** that the Motion to Dismiss be:

- **GRANTED** as to Plaintiff's § 19 claim against all Defendants.

- **GRANTED** as to Plaintiff's Title IX retaliation claim against all Defendants.

- **GRANTED** as to any Title IX discrimination claim asserted against Sul Ross and Board of Regents.

- **GRANTED** as to Plaintiff's First Amendment retaliation claim against Gallego, DeVoll, and Snyder.

- **GRANTED** as to Plaintiff's § 1983 *Monell* liability claim against Sul Ross.

---

294. *Bexar Metro. Water Dist. v. City of Bulverde*, 156 S.W.3d 79, 88 (Tex. App.—Austin 2004, pet. denied).
295. *Prime Income*, 2007 WL 2229050, at *5.
296. (Doc. 20).

- **GRANTED** as to Plaintiff's defamation claim against Sul Ross, DeVoll, Snyder, and Kara.

- **GRANTED** as to Plaintiff's declaratory judgment claim.

SIGNED this 14th day of February, 2023.

_____
DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT

In the event that a party has not been served by the Clerk with this Amended Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Amended Report and Recommendation by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Judge. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the U.S. Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal

the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).